## RICHARD WOFFENDEN v. PEDRO CHARAULEAU.

PROPERTY PURCHASED WITH PROCEEDS OF SALE OF WIFE'S SEPARATE PROP-
ERTY becomes the separate property of the wife, and the rents and profits
of her separate property are as absolutely hers, and as completely under
her control, as is the property of which they are the fruits.

ACT OF 1871 GIVES WIFE PERFECT FREEDOM IN CONTROL, USE, AND ENJOY-
MENT of her separate property, and makes her wholly independent of her
husband in regard thereto.

APPEAL from the district court of the first judicial district,
county of Pima. The opinion states the case.

*Titus* and *Hughes,* for the appellant.

This is an appeal by the defendant, from a judgment in
favor of the plaintiff for damages in forcible entry and de-
tainer.

1. In an action for damages in forcible entry and detainer,
the defendant is not precluded by the previous judgment of
restitution from showing title, or any other fact in bar or
mitigation of damages. This is especially true of cases in
which damages are claimed which do not necessarily result
from the alleged entry or detainer; and the court erred in
ruling otherwise in the present case. Comp. Laws, p. 369,
sec. 24; *Warburton* v. *Doble,* 38 Cal. 619; *Shelby* v. *Houston,*
Id. 410; *Swain* v. *Marsh,* 12 Id. 283; *Willson* v. *Cleaveland,*
30 Id. 102; *Miller* v. *Manice,* 6 Hill (N. Y.), 114.

2. In an action of damages for forcible entry and detainer,
in which damages are claimed which do not necessarily re-
sult from the alleged forcible entry and detainer, such dam-
ages are subject to the same proofs and set-off as similar
claims in any other action; and the court erred in ruling
otherwise in the present case. Comp. Laws, p. 393, sec. 46;
Id., p. 394, sec. 47, cl. 1; 2 Hilliard on Torts, 319; *Gogel* v.
*Jacoby,* 5 Serg. & R. 117; S. C., 9 Am. Dec. 339; *Heck* v.
*Shener,* 4 Serg. & R. 249; S. C., 8 Am. Dec. 700; 2 Story's
Eq. Jur., sec. 1437.

3. If the plaintiff in forcible entry and detainer continues
peaceably and quietly in possession of the property in con-
troversy for months after the alleged forcible entry and de-
tainer, and then voluntarily leaves such premises without
any disturbance, he is thereby estopped from recovering

damages in such case, especially if his own conduct contributed to induce the forcible entry and detainer complained of; and the court erred in ruling otherwise in the present case. *Slaughter* v. *Fowler*, 44 Cal. 195; *Page* v. *O'Brien*, 36 Id. 559; *Thompson* v. *Smith*, 28 Id. 527; *Morton* v. *Folger*, 15 Id. 275; Wharton on Neg., sec. 300.

4. In the territory of Arizona, since the act of 1871 relating to married women of the age of twenty-one years and upward, all property owned by them before marriage, as well as that acquired afterward, together with the fruits of the same, are separate property, and there is here, therefore, no such presumption as that any portion of such property or its fruits are common property, nor that the husband is entitled to the control or disposition of the same. Nor are such women, or those who claim through or under them, bound to furnish greater or other evidence of title or ownership than other parties litigant; and the court erred in ruling otherwise in the present case. Comp. Laws, p. 310, sec. 1; Id., p. 305, sec. 1; *Miller* v. *Fisher*, Sup. Ct. of A. T., Jan. term, 1875, *ante*, p. 232; *Earl* v. *Grim*, 1 Johns. Ch. 494; *Philipps* v. *Chamberlaine*, 4 Ves. 51; *Fox* v. *Phelps*, 17 Wend. 393; *Shrewsbury* v. *Shrewsbury*, 1 Ves. 227; *Ladd* v. *Ladd*, 8 How. 10; 2 Story's Eq. Jur., sec. 1368; *Selover* v. *Am. Russ. Com. Co.*, 7 Cal. 266; *Magee* v. *Scott*, 9 Cush. 148; 1 Greenl. Ev., sec. 74; *Lewis* v. *Johns*, 24 Cal. 98; Comp. Laws, p. 360; *George* v. *Ransom*, 15 Cal. 322.

5. In Arizona husband and wife may contract with each other, and their contracts bind them mutually. They are therefore bound by a contract with each other, the one not to interfere with the property of the other, or its fruits, especially when such contract is made to promote domestic harmony; and the court erred in ruling otherwise in the present case. Comp. Laws, p. 305, secs. 1, 3; Id., p. 310, sec. 1; *Miller* v. *Fisher*, Sup. Ct. of A. T., Jan. term, 1875, *ante*, p. 232; *Garlic* v. *Strong*, 3 Paige Ch. 440; 2 Story's Eq. Jur., secs. 1368, 1380; Kent's Com. 161, 166; *Bullard* v. *Briggs*, 7 Pick. 533;. S. C., 19 Am. Dec. 292; *Needham* v. *Sanger*, 17 Pick. 500; *Selover* v. *Am. Russ. Com. Co.*, 7 Cal. 266; *Miller Newton*, 23 Id. 554.

6. Since the Arizona act of 1871, relating to married women of the age of twenty-one years and upwards, such

women, when not joined by their husbands, may acknowledge their deeds before justices of the peace, and they need not be examined separate and apart from their husbands. The court erred in ruling otherwise in the present case. Comp. Laws, 310, sec. 1; Id. 305, sec. 1; Id. 360, sec. 4; *Miller* v. *Fisher*, Sup. Ct. of A. T., Jan. term, 1875, *ante*, 232; *Elliott* v. *Osborne*, 1 Cal. 396; *Blood* v. *Humphrey*, 17 Barb. 660; Abbott's N. Y. Dig., tit. Acknowledgment of Deeds.

7. The acknowledgment of November 2, 1875, upon the deed of February 11, 1874, if valid in other respects, related back to the making of the same, and constituted it competent evidence, without further sanction or proof, against all but *bona fide* purchasers without notice; and the court erred in ruling otherwise in the present case. *Johnson & Wife* v. *Stagg*, 2 Johns. 209; *Jackson* v. *Bard*, 4 Id. 230; *Heath* v. *Ross*, 12 Id. 140; *Stark* v. *Barrett*, 15 Cal. 361.

8. The wife is the agent of her husband in the custody and preservation of his property, and neither she nor those who act under her orders, therefore, are liable to him for preserving or even disposing of such property as he has abandoned to waste or destruction. The court erred in ruling otherwise in the present case. *French* v. *Braintree Man. Co.*, 23 Pick. 216; *Davis* v. *Butler*, 6 Cal. 510; *McGoon* v. *Aukeny*, 11 Ill. 558.

9. It was error in the judge who tried this case to indulge thereupon in such reflections on the counsel of defendant, or his mode of conducting the case, as tended to disparage the same with the jury.

10. The verdict in the present case is not justified by the evidence; it is against the law, and ought not to stand. Even if the verdict in the present case should be allowed to stand, it is excessive and ought to be reduced. Comp. Laws, 415, sec. 195, cl. 6; Id. 375, sec. 6.

*Farley* and *Pomroy*, for the respondent.

1. There should be a certificate of the judge or attorneys to the statement that it has been allowed and is correct, or that it has been agreed upon and is correct. Comp. Laws, 437, sec. 343.

2. The statement should have been filed within twenty

days after rendition of judgment.  *Macomber* v. *Chamberlain*, 8 Cal. 322; *Harper* v. *Minor*, 27 Id. 115; *Ryan* v. *Dougherty*, 30 Id. 221.

By Court, TWEED, J.:

The appeal is from the first district, Pima county.  Counsel for the respondent, before submitting his argument upon the merits of the case, asked to be heard upon a preliminary motion to strike out from the transcript certain portions thereof as not being properly certified, citing the twelfth rule of this court as entitling him to be heard upon such motion.

The rule invoked reads as follows: "Exceptions to the transcript, the bond or undertaking on appeal, or the notice of appeal, or to its service or proof of service, or any technical objection to the record affecting the rights of the appellant to be heard on the points of error assigned, must be taken at the first term after the transcript is filed, and must be noted in writing, and filed at least one day before the argument, or they will not be regarded.  In such case, the objection must be presented to the court before the argument on the merits."

On the tenth of January the case was set for argument on the thirteenth.  It was not reached until the twenty-fourth of that month.  On the twenty-first the counsel for respondent noted in writing and filed his objections to the transcript, and on the twenty-fourth, when the case was called for argument, asked to be heard upon his motion to strike out.  The court declined to hear the motion argued, and counsel for the respondent excepted to this ruling.

The object of the rule is obvious.  It is intended to enable the court, as early as is practicable, to dispose of all preliminary objections to a hearing upon the merits of the cases to be brought before it for consideration.  To hear such objections as early as possible for its own convenience and for the convenience of the appellant who might be permitted, in case of error or mistake in copying exhibits or otherwise, to correct the same in season for a hearing at the term.  The rule requires that the exceptions to the transcript be noted at least one day before the argument, or that they be disregarded.

When a case is set for argument, and no exceptions are noted and filed before the day so fixed, we think all exceptions to the transcript should be deemed to be waived. It was with this view of the intention and spirit of the rule cited that we declined to hear the motion of respondent's counsel; and we take occasion to say here, that while we do not wish to encourage any laxity in practice in appeals to this court, we shall avoid as far as possible allowing technical objections to stand in the way of a hearing upon the merits of such cases as may come before us.

There are obvious reasons why the supreme court of a territory like ours should, by liberal rules liberally construed, aid litigants to obtain a hearing upon the merits of cases brought before it by appeal.

We will now consider the case as presented to us. On the second day of July, 1875, a judgment was rendered by the judge of the district court, first district, Pima county, in favor of the plaintiff herein, in an action then pending in said court for forcible entry and detainer, wherein the plaintiff herein was plaintiff, and the defendant herein was defendant.

The premises in controversy in that action, and for which judgment of restitution was had in favor of the plaintiff, were three quarter-sections of land lying contiguous to each other in Pinal county, and known as the Robledo, Moreno, and Duran ranches. The plaintiff in this action asks to recover the rents and profits of the premises above mentioned from the tenth of April, 1874, up to the second of July, 1875, the period, as is alleged, during which the defendant wrongfully withheld the premises from the plaintiff. Also to recover the value of a quantity of corn and a growing crop alleged to have been upon the premises at the time of the unlawful entry of defendant, and by him converted to his own use; and, among other articles of personal property, two horses and three yoke of oxen, of the alleged value of two hundred and fifty dollars, etc.

The defendant in his answer claims ownership of the premises described in the complaint, admits that plaintiff was owner of one half of the growing crop, denies plaintiff's ownership of the horses and oxen, and alleges that he, the defendant, is the owner thereof.

On the trial the defendant introduced evidence tending to show that certain of the personal property, the oxen and horses, were purchased by him from Anna C. Woffenden, the wife of the plaintiff, and that this property was purchased by her separate means, and was her separate property.   Transcript, folios 61, 62.

Testimony of plaintiff upon cross-examination, where plaintiff, in answer to questions touching the purchase of this property, says: "I got that property at home; my wife bought it; she bought it with money belonging to both of us; what is hers is mine; I did not furnish any money directly to pay for it; I did not furnish any money." See also testimony of defendant, folio 81.

Among other instructions, the court charged the jury as follows: "The title to the ranches is not here in question, nor to be considered by you.   Whatever of the other property in controversy was acquired by the plaintiff and his wife subsequent to their marriage is common property, and as such subject to the management and disposition of the husband, and the wife had no authority to sell the same, unless you find that she was authorized thereto by her husband as any other agent might be.   The presumption of its being common property would be removed if you find that said property was taken in exchange for the separate property of either spouse, or was acquired by gift, bequest, devise, or descent; but such proof must be clear and satisfactory.   *   *   *   You must also find that said property was owned by her before marriage with the plaintiff, or acquired afterwards in the manner above described, in order that she might give a complete title thereto as against her husband; or you must find that she was the authorized agent of the husband to sell the same," etc.

The court also gave the following instructions: "If you find that any of the property in controversy is rents, issues, and profits of the separate property of either spouse, it is common property by the laws of this territory, and subject to the management of the husband, with like power of disposition as over his own separate estate, and no marriage contract in derogation of these rights is of any force or effect."

The jury rendered a verdict for the plaintiff for one thou-

sand dollars, itemized as follows: For one half of the crop of 1874, seven hundred and fifty dollars; three yoke of oxen valued at one hundred and fifty dollars; one horse valued at forty dollars; and fifteen hundred pounds of corn valued at sixty dollars.

Both these instructions were excepted to by counsel for the defendant, and their being given is assigned as error. In the first of these instructions we understand the learned judge to charge to the effect that to constitute separate property in the wife, when the property is obtained after marriage, it must have come to her by gift, bequest, devise, or descent, or it must have been obtained in exchange for her separate property; that she could not sell any portion of her separate property and invest the means derived from such sale in other property, and hold the same as a part of her separate estate, but that such property so purchased would become common property, and subject to the management and disposal of her husband.

Both of these instructions are erroneous. The first section of the act of January 22, 1871, entitled "An act relating to the separate property of married women," reads as follows: "Married women of the age of twenty-one years and upwards shall have the sole and exclusive control of their separate property, and may convey and transfer lands or any estate or interest therein vested in or held by them in their own right, and without being joined by the husband in such conveyance, as fully and perfectly as they might be if unmarried." The second section repeals all acts and parts of acts so far as they conflict with these provisions.

The sole and exclusive control and the right to convey as if unmarried given by this statute to the wife involves the right so to control and convey for her own separate use and benefit; it involves the right in the wife to sell any of her separate property, and to invest the proceeds of such sale in the purchase of other property for her own use; it also involves the right of the wife to the rents and profits of her separate property, and its use by her in the investment of the same as she may choose.

To say that the wife shall have the sole and exclusive control of her separate property, and that she may sell and transfer the same as if unmarried, and then to attach to such

right the condition that when in controlling such property she receives the rents and profits thereof, such rents and profits shall become common property and under the exclusive management of the husband, and that when she sells and conveys her separate property, the receipts of such sale, or the property in which she invests such receipts, shall become common property and pass wholly beyond her right to use the same, or her control thereof, is affixing a condition to the right given to her which utterly destroys the right itself.

We have no doubt that under this statute the rents and profits of the wife's separate property are as absolutely hers, and as completely under her control, as the property of which they are the fruits; and that she may use such rents and profits and the proceeds derived from the sale of any of her separate property in the purchase of other property, and that such property so purchased will remain a part of her separate estate; and we have no doubt that every provision of our statutes in force when this act of 1871 was passed, limiting the rights or powers of the wife as to her separate property by making the rents and profits thereof, or the receipts for the sale thereof, or the property purchased therewith, common property to be managed and controlled by the husband, was in conflict with the provisions of this act, and was repealed by the repealing clause thereof.

If the instructions under consideration are correct, from the day of the wife's marriage, however ample her separate means may be, she is wholly deprived of their use and enjoyment. She may not gratify her taste by the purchase of a single article for the adornment of her person, nor bestow upon a needy relative, be the same father, mother, brother, or sister, such aid as their needs may require and such as she may desire to relieve; she may not even of her own fortune provide for the education of her own children if she have such when married, but must depend wholly upon the will or whim of her husband in the use of means which may have been acquired by her own labor, learning, and skill before her marriage.

Practically, this ruling places the wife in the same *status* in which she stood under the act of 1865 as to her separate property, the only effect given to the act of 1871 being to

give the barren right to convey without being joined with the husband, and places the proceeds of her separate property, as well as the rents and profits thereof, wholly in the hands and under the control of the husband.

The act of 1865, above referred to, in its first section prescribes that "all property, both real and personal, of the wife owned by her before marriage, and that acquired afterwards by gift, bequest, devise, or descent, shall be her separate property."

The second section provides that "all property acquired after marriage by either husband or wife, except such as may be acquired by gift, bequest, devise, or descent, shall be common property."

The ninth section of the same act takes from the wife all beneficial interest in her separate property by giving to the husband the management and control of the same, and the rents, issues, and profits thereof, making the rents, issues, and profits common property.

It was doubtless the intention of the legislature, by the act of 1871, to get rid of the obnoxious provision in the act of 1865, by which the wife's separate property became in effect common property and subject to the management and control of the husband. The act of 1871 gives to the wife perfect freedom in the control, use, and enjoyment of her separate property, and makes her wholly independent of her husband in regard thereto.

We hold further, that the act of 1871 adds another method to those provided in the second section of the act of 1865, by which the wife may acquire property after marriage; that the right to the sole and exclusive control of her separate property, and the right to sell and convey the same free from the interference of her husband, involves the right in her, and for her own use, to purchase property with the means she may derive from such sale, or by the investment of the rents and profits of her separate estate.

These views accord with the decision of this court at this present term in the case of *Charauleau* v. *Woffenden, ante,* 243.

The instructions as given must be presumed to have influenced the jury in their verdict as to certain of the personal property in controversy.

We do not deem it necessary to pass upon other matters occurring at the trial and assigned as error.

The judgment must be reversed, and the cause remanded for a new trial; and it is so ordered.

PORTER, J., concurred.

DUNNE, C. J., delivered the following dissenting opinion:

I dissent.    1. The same condition of facts exists in this case as to the objection to the statement as in the case of *Charauleau* v. *Woffenden*, decided at this term of the court, and for the same reasons there stated I consider there is nothing before this court in this transcript but the judgment roll, in which no error appears, and that the judgment for that reason should be affirmed.

2. Accepting, however, the unauthenticated statement as true, it appears therefrom that plaintiff had obtained judgment against defendant for forcible entry and detainer of certain premises.   He then brought his action for damages consequent and attendant upon said entry and detainer, under Comp. Laws, 369, sec. 24.

He alleged three thousand six hundred dollars damages for rents and profits, and one thousand eight hundred and ninety dollars damages for personal property on said premises taken by defendant at the time of entry.   There are two crops spoken of in the testimony, the crop of 1874 and the crop of 1875.   As to the crop of 1874, defendant admits its value to be as charged in the complaint, but claims he owned one half of it.

The crop of 1875 defendant claims was planted by him during the time he was adjudged to be in unlawful possession of the premises.   Defendant undertook to prove the value of the crop of 1875, to show that he had placed articles of value on the premises, of which plaintiff got the benefit, and defendant stated that he offered proof on this point as having a bearing on 'the question of damages.   Excluded, wherein appellant assigns error No. 1.

We are governed here by the common law in the absence of statutory provisions; at common law a trespasser could not prove value of improvements made by him as a set-off to damages for trespass.   By statute here in ejectment, where

defendant enters in good faith under color of title adverse
to plaintiff, he may prove value of improvements made by
him as a set-off against damages.   But there is no provision
for doing it as against damages for forcible entry and unlaw-
ful detainer.   The exclusion was not error.

Assignment No. 2 is, that the court refused to allow de-
fendant to prove ownership of the premises on which it had
been adjudged he had forcibly entered, the value of the crop
of 1874, and the animals in contest, in mitigation of dam-
ages.   It was not error to exclude evidence of title in defend-
ant.   Title of the land could not be raised in this action; and
concerning the allegation that it was error to exclude evi-
dence of the value of the crop of 1874, there is nothing in the
transcript to show that any evidence was offered concerning
the value of the crop of 1874; besides, the defendant admitted
in his answer the value of the crop of 1874 to be as charged
in the complaint.   The latter portion of the assignment,
that the court excluded evidence of the value of the animals
in question, is not warranted even by the unauthenticated
statement.   The unauthenticated statement shows no such
exclusion, but on the contrary, shows that evidence as to
the value of the animals, and all about their purchase, and
that of other property and its value, was admitted without
objection.

Assignment No. 3 was for refusal to permit defendant to
ask a certain question at a certain time.   Even if that were
error, the unauthenticated statement shows it was cured by
allowing the same question to be asked later in the examina-
tion of the same witness.

The fourth assignment of error is a duplication of assign-
ment No. 2—that the court excluded evidence of title to the
land—and is answered in the remarks on that assignment.

The assignments from 5 to 15 inclusive are for error
in instructions.   The only one of these instructions about
which I understand there is serious contest is No. 10, in-
structing the jury that the rents, issues, and profits of the
separate property of either spouse are common property,
under the law of this territory   It is argued that the adjudi-
cations of the supreme court of California are against the
doctrine of this instruction.   Section 9, page 307, of our
compiled laws, declares in express terms that the rents and

profits of the separate property of either spouse are common property.

Our law on this subject is taken from the California law. Section 9 in the California law is the same as our section 9. In 1860 the supreme court of California construed section 9. We adopted section 9 in 1865, presumptively with notice of the construction given to it in California. The supreme court of California held that section 9 of the California law was inoperative in its declaration that the rents and profits of the wife's separate property should be common property. But why?

Because it was, as they say, in conflict with the constitution of California, and that the legislature had not the power to modify the law of the constitution; that the constitution gave to the wife separate property; that at common law a right to separate property gave the right to the rents and profits thereof as separate property also; and that the legislature had no power to say it should be otherwise. But in this territory the matter is not governed by constitutional provision; all the rights the wife has are fixed by the legislature. Our legislature has power to say the wife shall have no separate estate at all. It has power to say just what estate she may have is separate property. They have said that she shall have what the court in California calls a reversionary interest; one which, the court continues, can "be of no avail to her except in the contingency of her surviving her husband." The court speaks of it as a "barren right." But is it such a great anomaly to allow the head of the family to control the usufruct of his wife's property, and dispose of it for the maintenance and care of the family, the support and education of the children, and to have some enjoyment of it also himself, perhaps, while the property itself is put safely beyond his control? He can not divest the wife of the property owned by her; that is secured for her children if she so desire. Is there anything against public policy or *contra bonos mores* in such a law? Have not the legislature of Arizona power to make such a law if they like? If they choose to adopt one feature of the law of California recognizing separate property in the wife, have they no power to say that certain conclusions drawn therefrom by the courts of California shall not obtain in Arizonia? Five years after

that decision was rendered in California, declaring that rents and profits followed the separate estate and were separate property in that state, the legislature of Arizona deliberately declared that in Arizona the rents and profits should be common property. What is to hinder their doing so? There is no parity in the legislation on the subject. In Arizona it is all the act of the legislature. In California the law is partly statutory and partly constitutional, and of course nothing in the statute may contravene the constitution. But make the cases similar: Suppose that section 14 of article 11 of the California constitution were followed by a section declaring that though certain property should be the separate estate of the wife, the rents and profits of that estate should be common property, would not the courts give force to both sections? Necessarily they would, because both sections would then be of equal authority, and would be capable of standing together. So they are in this territory. The statutes are all of equal authority, are all *in pari materia*, must all be taken together, and force given to all.

There is a fourth objection, that the verdict is contrary to the evidence. There was no motion for a new trial. Such an objection is available only on motion for a new trial, so as to give the court an opportunity to submit the case to another jury. The objection can not properly be considered here. But nevertheless, what is the objection? The only controverted facts on which the jury gave a verdict were as to the ownership of three oxen and one horse. The only evidence as to the ownership of this property was that of the plaintiff, from whose wife defendant claimed to have bought this property. He said in substance: "My wife did not own any of this property before marriage; it was all acquired since. My wife bought it with money belonging to both of us. What is hers is mine. I did not furnish any money directly to pay for it. I did not furnish any money." Plaintiff showed he had used these animals in putting in his crop. On this evidence, in substance, the jury by their verdict practically declared that this was common property. Even if it should be conceded that this was against the evidence, what power did the court below have to correct it? The court was bound to receive the verdict. The defendant did not ask for a new trial. The court

was, therefore, compelled to enter judgment. The defendant can not now raise any objection to the verdict on that ground. He had his day in court on that point, and allowed it to go without objection.

The last objection urged is that the verdict is excessive and ought to be reduced. Plaintiff was entitled to the value of the rents and profits of the premises. He gave evidence that the use of the premises was worth one thousand five hundred dollars for the time they were withheld. The defendant admitted that plaintiff owned one half of the crop of 1874, and that that one half was worth seven hundred and fifty dollars, and owned corn worth sixty dollars, making eight hundred and ten dollars.

That was all the jury gave him, except one hundred and ninety dollars for three yoke of oxen and one horse. I do not think the verdict was excessive, particularly when in an action like this the law says the damages may be trebled. The damages were not trebled in this case, nor raised in any amount beyond that awarded by the jury, and no motion was made for a new trial on the ground that the damages given were excessive. I am therefore of opinion that the judgment should be affirmed.