[Civil No. 2780. Filed June 11, 1929.]

[278 Pac. 371.]

In the Matter of the Disbarment of B. H. GIBBS, an Attorney of This Court.

See Attorney and Client, 6 **C. J.**, sec. 11, p. 569, n. 29.

Mr. John W. Murphy, Attorney General, for Petitioner.

Mr. D. V. Mulhern, for Respondent.

LOCKWOOD, C. J.—The Arizona State Bar Association filed an original proceeding in this court, charging that B. H. Gibbs, hereinafter called respondent, one of the duly licensed members of the bar of this state, was engaged in certain practices which, under the provisions of chapter 32, Session Laws of 1925, were ground for disbarment. Respondent answered, admitting the doing of the acts charged, but denying that they were in any manner violative of the statute, or of the ethical standards required of an attorney at law, and the questions involved were submitted to us on an agreed statement of facts.

We desire to state in the first place that the charges in no way involve any suggestion of moral turpitude on the part of respondent, but rather an honest difference of opinion as to whether attorneys at law in Arizona are prohibited from using certain methods of advertising, and he has stated from the inception of this proceeding that, should the court decide those methods are improper, he will gladly desist from them.

Respondent is, and has been for many years, a highly respected member of the Arizona bar, and has

also been admitted to practice as an attorney before the Department of the Interior. For some ten years he has specialized in representing claimants before the United States Land Office, though he has also during said time engaged in the general practice of law in the courts of Arizona to some extent. He has for a considerable period been in the custom of circularizing claimants and prospective claimants before the Land Office by means of mimeographed postals and letters, and it is this practice which is complained of. We quote in full two letters which are fair samples:

"B. H. Gibbs        Phone 6011        O. C. Gibbs
        "Gibbs & Gibbs, Lawyers
    "Gooding Bldg. (Over Santa Fé Ticket Ofc.)
                "Phoenix, Arizona, October 31, 1925.
"Mr. F. R. Moulton,
    "Care Mr. E. T. Cusick,
        "Tucson, Arizona.

"Dear Mr. Moulton: Consider the benefits to be derived from having an attorney resident at Phoenix to guard and put forward one's interests before the United States Land Department, the State Land Department, the State Water Commissioner, or any other branch of the Federal or State Government. The same sound business reasons which impel the larger concerns to employ resident attorneys on a regular annual basis apply equally to the smaller outfits and individuals. We solicit your business along these lines. Would not it appeal to you to have an attorney here to whom you would be free to apply for information, advice and guidance at any time?

"A knowledge of the law is, of course, basically, the most important; tho a knowledge of the regulations is almost of equal importance. And, not infrequently, a knowledge of the practice and procedure (or knowing when, where and what to do next) becomes of paramount importance. Turn over to us your perplexing land problem, government or state. You may learn of some one confronted with such a problem. Suggest that he also turn his trouble over to us. Maybe you haven't any question now press-

ing for immediate solution; but, the chances are, we can so assist and guide you in connection with some government or state land matter—in ways that have not occurred to you—that you can very materially benefit.

"Suggestively: Do you know that women have almost as many rights as men under the federal and state land laws? If you own land adjoining which there is vacant government land too rough, rocky, or mountainous for cultivation, do you know how to buy 160 acres of it at but a nominal price? Do you know what preferred right a homesteader has to lease state lands adjoining or adjacent to his home? These questions but indicate other ways by which many could greatly benefit, if they only knew how.

"We would welcome an opportunity to become personally acquainted. Whenever you shall be in Phoenix, come in and make yourself at home. If to do so would be a convenience, have your mail come in our care while you may be in Phoenix.

"Yours for service,
"GIBBS & GIBBS,
"By B. H. GIBBS."

"B. H. Gibbs                                    Phone 6443

"Gibbs & Gibbs, Lawyers
"Suite 304 Homebuilders
"Phoenix, Arizona, April 21, 1928.
"Mr. Jeff D. Milton,
"Fairbank, Arizona.

"Dear Mr. Milton: You have an interest now pending before the United States Land Office here. Sound business principles not only justify, they *demand* that you have competent experienced lawyers resident here to advise and assist you in getting your interests properly initiated, put forward and perfected. The larger business concerns frequently are envied the prompt and thoro manner in which their interests are cared for. Don't *envy* them! Have the same beneficial results they do, by retaining resident attorneys here to guard, protect, and put forward your interests; saving yourself from much worry, work, delay, expense and, possibly, considerable material loss.

"You will not have to think very long or very hard to arrive at the conclusion that it is much cheaper to be *kept* out of trouble than it is to be *pulled* out! Do you think the Chinese are very far wrong if they pay their doctors only while they are *kept* well?

"If you're not already represented here we solicit your work before the United States Land Office, offering you the benefits which may be derived from some twenty years of education, training and experience in public land matters as a Special Agent and Chief of Field Division of the General Land Office. For more than 8 years we have specialized land causes here before the United States Land Office, before the General Land Office, and before the Department of the Interior. Knowledge of the law is, basically, most important, of course. Also, a knowledge of the rules and regulations is quite important. However, very frequently, a knowledge of the practice and procedure (or What, Where and When to do *next*) becomes of paramount importance in promptly and thoroughly guarding and perfecting your interests.

"Get in touch with us by calling, writing, telegraphing or telephoning. You probably will be quite surprised, as many have been, to learn of the ways in which we can be of service to you; of which the average public land seeker and claimant has not even thought.

"We beg to remain at your service,

"GIBBS & GIBBS,

"By B. H. GIBBS.

"P. S.—Perhaps the section plats on the backs of the inclosed sheets may be of some use to you?"

Chapter 32, *supra,* makes a violation of the canons of ethics of the American Bar Association ground for disbarment. The particular canon which it is claimed letters such as those quoted violates reads as follows:

"27. The most worthy and effective advertisement possible even for a young lawyer, and especially with his brother lawyers, is the establishment of a well-merited reputation for professional capacity and fidelity to trust. This cannot be forced, but must be

the outcome of character and conduct. The publication or circulation of ordinary simple business cards, being a matter of personal taste or local custom, and sometimes of convenience, is not *per se* improper. But solicitation of business by circulars or advertisements, or by personal communication or interviews, not warranted by personal relations, is unprofessional. It is equally unprofessional to procure business by indirection through touters of any kind whether allied real estate firms or trust companies advertising to secure the drawing of deeds or wills or offering retainers in exchange for executorships or trusteeships to be influenced by the lawyer. Indirect advertisement for business by furnishing or inspiring newspaper comments concerning causes in which the lawyer has been or is engaged, or concerning the manner of their conduct, the magnitude of the interests involved, the importance of the lawyer's positions, and all other like self-laudation, defy the traditions and lower the tone of our high calling, and are intolerable.''

Briefly stated, respondent's position is as follows: Practice before the United States Land Office is regulated by title 5, chapter 8, section 493, United States Code, and the regulation prescribed by the Secretary of the Interior in pursuance of such section. This section, and the regulations thereunder material in this case, read as follows:

''493. *Agents or attorneys representing claimants before Department.*—The Secretary of the Interior may prescribe rules and regulations governing the recognition of agents, attorneys, or other persons representing claimants before his department, and may require of such persons, agents, and attorneys, before being recognized as representatives of claimants, that they shall show that they are of good moral character and in good repute, possessed of the necessary qualifications to enable them to render such claimants valuable service, and otherwise competent to advise and assist such claimants in the presentation of their claims and such secretary may, after notice and opportunity for a hearing, suspend

or exclude from further practice before his department any such person, agent or attorney shown to be incompetent, disreputable, or who refuses to comply with the said rules and regulations, or who shall with intent to defraud in any manner, deceive, mislead, or threaten any claimant, or prospective claimant, by word, circular, letter, or by advertisement."

"1. Any person who is an attorney at law in good standing and a citizen of the United States, or has declared his intention to become such a citizen, may be admitted to practice as an attorney in and may be recognized as the representative of claimants before the Department of the Interior and its several bureaus by presenting for that privilege his satisfactory application containing recitals as to the following facts: . . .

"3. Any competent person who is a citizen of the United States, or who has declared his intention to become such a citizen, and who is not an attorney at law, may be admitted to practice as an agent in, and may be recognized as the representative of claimants before the Department of the Interior and all its bureaus by presenting his satisfactory application, under oath, for that privilege containing recitals as to the following facts: ; . . ." Volume 46, Land Decisions, p. 208.

"8. Every attorney must, either at the time of entering his appearance for a claimant or contestant, or within thirty days thereafter, file written authority for such appearance, signed by said claimant or contestant and setting forth his or her present residence, occupation, and postoffice address. Upon a failure to file such written authority within the time limited, it is the duty of the register and receiver to no longer recognize him as attorney in the case." Volume 35, Public Land Decisions, p. 535.

It has been the almost universal custom of persons representing claimants before the Land Office, whether as agents or attorneys, to circularize prospective patrons in a manner similar to that used by respondent, and such practice is held proper and sanctioned by the department. It is urged, first, that the solicitation of business referred to as unethical

by the canon above set forth refers solely to the ordinary business of an attorney at law, and that practice before the Land Department does not come within that category; and, second, that even though it might be held to be legal business within the proper meaning of the term, the prohibition of the canon in the light of our statute applies only to the practice of law before the courts of Arizona, and not to business which by its very nature comes only before the tribunals of another sovereignty.

The right to practice law is not, like the right to engage in the ordinary business or occupation, a constitutional one. *In re Bailey,* 30 Ariz. 407, 248 Pac. 29; *Ex parte Yale,* 24 Cal. 241, 85 Am. Dec. 62; 6 C. J. 569. The legal profession is one of great powers and privileges, and of correspondingly high and exacting responsibilities, and may therefore be surrounded by restrictions not applying to other walks of life. The duties imposed on an attorney often cover interests of the highest conceivable character; life, liberty, reputation and property are often entrusted to his care. In America, more than in other countries, perhaps, the bar has furnished a greater number of leaders of the nation than any other occupation, and in the past at least, the great mass of our citizens have looked to the members of the legal profession to furnish an example of ability, honesty and self-sacrificing service for the common good. That in some cases this trust has been betrayed is, alas, but too true. But this only furnishes an additional reason why those charged with the duty of seeing that the torch burns with undimmed brightness must hold the standard of ethics so high that the members of the profession shall not only actually possess those qualities which will justify the trust and confidence of the public, but also that their conduct shall be like that of Caesar's wife—"above suspicion."

It is for this reason that the American Bar Association, which admittedly speaks for the highest standards and customs of the bar, has laid down its famous canon 27, and that our legislature has recognized that canon and crystallized it into law. From time to time, since the adoption of the canon, the Association has been called on to interpret it, and its opinions, while not having the binding effect of a court decision, are at least valuable as indicating what the framers of the canon understood it to mean. In 1922 it was called to the attention of the Association that various laymen prosecuting claims before the patent office and the Commissioner of Internal Revenue were calling themselves "attorneys," and circularizing claimants as did respondent, and the Committee on Ethics recommended that an effort be made to bring about the discontinuance of such advertising so long as the parties called themselves "attorneys." Reports, American Bar Association, 1922. In 1924 it was reported that some members of the Association were using circular letters to solicit employment for prosecuting claims before accounting officers in some of the federal departments, and justifying the practice by the custom of the departments involved. The committee condemned the practice, and refused to consider the custom as a justification. Reports, American Bar Association, 1924. In 1926 the same practice of circularizing in regard to patent office practice and other departmental work was considered and censured as being a general scandal to the profession. Reports, American Bar Association, 1926. From the language of these opinions, there can be no doubt that the Association would consider practice before the Land Office in the same category with practice before the patent office, and subject to the same rules.

Respondent urged strenuously in the oral argument that since laymen were permitted to practice

before the department, and to advertise by circulars, it was evident that representing claimants before the department was not the practice of law. This may be true, but the argument fails to consider the vital meaning and purpose of the canon. It is not the advertising that respondent will represent claimants before the Land Office which is objectionable, but the representation, direct or indirect, that his membership in the bar of Arizona will assist him in such work. It is, of course, true that a lawyer may engage in other business than the practice of law, and while in such business may follow the methods of advertising proper thereto, provided always that he does not in any manner in such advertisements use his legal standing to assist him in his other business. He may advertise that he is in the contracting business, but may not refer to his membership in the legal profession in order to assist in securing such business. As was said by the Supreme Court of New York in *In re Schwarz*, 175 App. Div. 335, 161 N. Y. Supp. 1079; Id., 231 N. Y. 642, 132 N. E. 921:

"The court has no disciplinary supervision [over] business enterprises. It has jurisdiction over its own officers, and is authorized to discipline any attorney who is guilty of professional misconduct. . . . If respondent wishes to retain and carry on the business which he claims is so valuable to him, he may do so outside of the profession whose standards and rules of conduct he has violated; he cannot remain a member of the bar of this state, and, while such member, indulge in such practices."

On examining the circular letters in question in this proceeding it appears that they were written on letter-heads which called attention of the recipients to the fact that respondent was a lawyer, and he referred to himself as an "attorney" or "lawyer" all through the circulars. He mentions the value of knowledge of the law, and of being represented by

an attorney or lawyer before the Land Office. There can be no doubt that the ordinary person, when the word "attorney" or "lawyer" is used, considers it to mean a duly qualified and admitted member of the bar of the state where the user lives, and the whole effect of the circulars in question upon those who received them must have been that the writer was a member of the bar of the state of Arizona, and that because of such membership he was peculiarly qualified to look after the interests of claimants before the Land Office. Even though practice before the Land Office be not considered as the practice of law in the circulars quoted, respondent was advertising and was relying upon his professional character as an inducement to secure business. In our opinion this is a violation of the canon of ethics in question, and is prohibited by the statutes of Arizona.

It is not necessary at the present time that an order of disbarment, suspension or, in view of the general good character of respondent, even of censure, be entered. He has stated, both in his answer to the petition, and in open court, that he will desist from this practice in case the court should find it contrary to the canon in question, and the petition will be dismissed on our statement of the law, with leave to renew, should it become necessary.

McALISTER and ROSS, JJ., concur.