195 P.2d 132

**PORTER v. PORTER.**

No. 4896.

Supreme Court of Arizona.

Feb. 16, 1948.

Rehearing Denied March 22, 1948.

Alice M. Birdsall, of Phoenix, for appellant.

George T. Wilson, of Phoenix, for appellee.

THOMAS, Superior Judge.

A brief statement of the facts involved in this case is deemed essential for a proper understanding of the law involved in the premises.

Pearl C. Porter, appellant and cross-appellee, and Harold C. Porter, appellee and cross-appellant, will be, for the sake of convenience, hereinafter referred to as they appeared in the lower court, plaintiff and defendant, respectively.

The above-named parties were married December 25, 1928, and with brief separations, lived together as husband and wife until August, 1943. Two children were born of the marriage; namely, Anita Jean, born January 7, 1930, and Earl Clark, born December 19, 1932.

At the time of the above marriage, defendant owned real and personal property consisting in the main of a one-third interest in the N. Porter Saddle & Harness Company, a partnership, engaged in the manufacture and sale of leather goods. Shortly thereafter the partnership was converted into a corporation; the defendant was then issued 408⅓ shares of the capital stock of the corportion (hereinafter referred to as Porter & Company) which corresponded to his one-third interest in the partnership. Defendant also owned at the time of his marriage a one-half interest, with his uncle, in the Porter Livestock Company, a partnership, possessed of approximately five thousand head of sheep and certain grazing rights in Northern Arizona. Together with his uncle, defendant also owned a one-half interest in a 320 acre ranch at Laveen, Arizona, and a furnished home situated on a 2½ acre plot of the above ranch, which plot had been deeded to him by the partnership. Plaintiff and defendant moved into the home a few weeks after their marriage. Plaintiff, at the time of the marriage to defendant, possessed no property nor financial means and acquired none independently of the community during the marital period.

During the first year of the marriage, defendant was employed by the Porter Livestock Company at a monthly salary of $125. Thereafter, excepting for several interruptions caused by serious illnesses, defendant worked for Porter & Company. There is no claim nor evidence that he was paid by Porter & Company more than was commensurate with the duties he performed, or that he contributed any unusual talent or skill essential to the financial success of the corporation.

Prior to and at all times during the marriage, defendant transacted his personal financial affairs through Porter & Company, the corporation in effect serving as his banker. By this arrangement defendant was enabled, throughout the marriage, to keep a record of his income from all sources with Porter & Company and thereby obviate the necessity of an individual bank account.

At the inception of the trial a certified public accountant was appointed by the court to act as a master, to audit the books of Porter & Company with reference to the property rights of plaintiff and defendant. The master's report, embracing the accounts of defendant with Porter & Company between the years 1930 and 1944, inclusive, was filed and received in evidence. Respecting his audit of the Porter & Company books, the master made this observation: "* * * but that is one of the things about the accounting that is kept by Porter & Company, they are not a bit niggardly in their expenditure of man power in writing up their accounts, they itemize so many things in the ledger it is plainly evident that one can look at the account and gather a very clear picture of what took place. * * *"

Approximately three weeks after the marriage, plaintiff and defendant opened a joint or community account in a Phoenix bank to serve as a depository for defendant's earnings from his employment, and by means of it to meet the community expenses. Such an account was maintained throughout the marriage with the exception of approximately two years (September 1934 to September 1936) and a break between 1939 and 1940.

The evidence was rather conclusive that during the entire marital period, defendant's salary check or its equivalent was deposited by the bookkeeper for Porter & Company to the joint bank account of plaintiff and defendant, or delivered to plaintiff in person. It is conceded, and the evidence abundantly proves, that defendant's salary was at all times inadequate for the maintenance of the community expenses and that as a result therefrom he drew monies from his personal account at various times during the marriage to meet the deficiency of the household needs.

Somtime subsequent to the marriage, defendant disposed of his one-half interest in the Porter Livestock Company partnership for $9,253.79; his one-half interest in the Laveen Ranch for $16,495.83; and his home situated on the Laveen Ranch for $1,814.76. With the above sums, defendant's personal account with Porter & Company was credited, as well as dividends from his stock in the corporation, which during the marital period totaled the sum of $96,696.21. During the existence of the marriage, purchases were made of a home in Tucson, Arizona, which was afterwards sold; of a home in Phoenix, Arizona; a one-half interest in three cat-

tle ranches in Gila County, Arizona; a Packard automobile; a house trailer; a motorcycle; two insurance policies, found by the lower court to have at the time of the trial a cash surrender value of $4,573.60. The above real and personal property, as well as cash in the sum of $4,410.20, was possessed by the parties at the termination of the trial.

Plaintiff was awarded a decree of divorce from defendant; the custody of the two minor children; alimony in the sum of $200 per month and support money for the said minor children in the sum of $150 monthly. The trial court further decreed that the Phoenix home, the Packard automobile, the trailer and motorcycle, the two insurance policies and the cash item of $4,410.20, were community property of plaintiff and defendant. The court decreed that defendant was the owner, as his separate property and estate, of 408⅓ shares of capital stock of Porter & Company corporation; also one violin, one ceder chest with contents (unknown), one Remington picture, one Birdseye maple dresser, chair and foot stool; also an undivided one-half interest in the three cattle ranches in Gila County, Arizona (described by metes and bounds).

As her share of the community property, plaintiff was awarded the Phoenix home and furnishings, with the exception of the articles above enumerated as being the separate property of defendant, and the Packard automobile. The Phoenix home was evaluated by the court at $15,000, and defendant ordered to satisfy a then existing lien on said home of approximately $2,000, and to pay plaintiff $750 for court costs and attorney fees.

Defendant was awarded as his share of the property found to be community property, the trailer, motorcycle, the two insurance policies and the cash item of $4,410.20. To secure payment of alimony and support money for the minor children, as provided in the decree, a lien was fixed by the court on defendant's 408⅓ shares of the capital stock of the Porter & Company corporation.

No appeal is taken from the provisions of the decree awarding plaintiff a divorce and custody of the minor children. Plaintiff makes twenty-five assignments of error, which may be grouped into three propositions of law stated as follows:

"First, the determination of the community property rights of appellant in various property, both personal and real, acquired during sixteen years of married life throughout which time property of the parties had been commingled, without segregation, title generally taken in the names of both parties and income from all of same returned as community income, the trial court having held the greater part of this property to be appellee's separate property.

"Second, an abuse of judical discretion in making division of that property which the court held to be community because

it was not made 'in accordance with justice and right', the court having awarded to appellee what is contended to be a wholly excessive and unjust share thereof, including all available cash and credits, this notwithstanding appellee was found to have been guilty of all charges made by appellant in her complaint, and was also left by the decree with extensive and valuable separate property holdings, the effect of this division being to place a premium on, and encourage, conjugal wrongdoing.

"Third, an abuse of judical discretion in awarding to appellant for the support of herself and children and to maintain a home, a wholly inadequate amount in consideration of the indisputable evidence of the income of appellee, and the amounts that had been expended on the home over a period of many years prior to the time appellee left it; also, the inadequacy of the allowance made to appellant for compensation of her attorneys in view of the amount of time and work required and the amounts which the evidence showed were paid to counsel for appellee."

The decisions of this court, and the statutes of Arizona, leave no new principles to be established in this case. It is only required that the well defined principles heretofore enunciated be applied to the foregoing facts. The clearly established principles of law as set out in our statutes and decisions of this court, which have application to this case may be summarized as follows.

I. "All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, or earned by the wife or minor children, while she has lived or may live, separate and apart from her husband, shall be the community property of the husband and wife. During the coverture personal property may be disposed of by the husband only." Sec. 63-301, A.C.A.1939. See also Malich v. Malich, 23 Ariz. 423, 204 P. 1020; Horton v. Horton, 35 Ariz. 378, 278 P. 370.

There is a legal presumption in this jurisdiction that all property acquired by either spouse during coverture takes on a community character. This presumption can be rebutted only by "strong", "satisfactory", "convincing", "clear and cogent", or "nearly conclusive evidence". In this respect it differs from most legal presumptions that are dispelled immediately upon the production of any evidence negativing the presumption. The court must be satisfied that the property really is separate before it can state that the presumption has been dispelled. As long as there is any doubt, the property acquired during coverture must be presumed to be community property. In the case of Blaine v. Blaine, 63 Ariz. 100, 159 P. 2d 786, 790, the court said:

"This court has held on many occasions that property acquired by either spouse during coverture is presumed to be community property. In order to overcome

this presumption the evidence must be clear, satisfactory and convincing.

\* \* \* \* \* \*

"Where the claim is made that property purchased during the existence of a marriage is the separate property of one of the spouses, the fund with which such property was acquired must be clearly shown to have been the separate property of such spouse. No inference will be made against the community character or that the fund was separate, except under circumstances of a conclusive tendency. The presumption in favor of the community character of the property acquired during marriage may be overcome only by clear and cogent proof."

This seems to have been the holding of this court and other community property states consistently, and leaves no doubt as to the principle of law involved.

II. "All property, both real and personal, of the husband, owned or claimed by him before marriage and that acquired afterward, by gift, devise or descent, as also the increase, rents, issues and profits of the same, shall be his separate property \* \* \*." Sec. 63-302, A.C.A.1939.

This has been the law of Arizona since the decision in the two Woffenden v. Charauleau cases, 1 Ariz. 346, 25 P. 662; Woffenden v. Charouleau, 2 Ariz. 91, 11 P. 117. However, the above rule may be qualified, as enunciated in the case of Rundle v. Winters, 38 Ariz. 239, 298 P.

929, 931, where the court stated: "Where either spouse is engaged in a business whose capital is the separate property of such spouse, the profits of the business are either community or separate in accordance with whether they are the result of the individual toil and application of the spouse, or the inherent qualities of the business itself."

This rule was further amplified in Re Torrey's Estate, 54 Ariz. 369, 95 P.2d 990. It is again applied in Anderson v. Anderson, 65 Ariz. 184, 177 P.2d 227, 229. In Anderson v. Anderson, supra, the court said that the success of the clothes cleaning business "is due to the management and requires the attention of the owner" and that, therefore, the income from such business is community.

An analysis of the holdings of appellate courts in this and other community property jurisdictions discloses that income from pool and billiard halls, restaurants, cleaning establishments, lumber mills, bakeries, liquor and cigar stores, saloon and gambling parlors, farms, drayage and forwarding businesses, and the income of a practising physician have all been held to be community in character. Rundle v. Winters, supra; In re Torrey's Estate, supra; Anderson v. Anderson, supra; In re Buchanan's Estate, 89 Wash. 172, 154 P. 129; Jacobs v. Hoitt, 119 Wash. 283, 205 P. 414; Pereira v. Pereira, 156 Cal. 1, 103 P. 488, 23 L.R.A., N.S., 880, 134 Am. St.Rep. 107; In re Gold's Estate, 170 Cal.

621, 151 P. 12; Laughlin v. Laughlin, 49 N.M. 20, 155 P.2d 1010; In re McCarthy's Estate, 127 Cal.App. 80, 15 P.2d 223; Falk v. Falk, 48 Cal.App.2d 762, 120 P.2d 714. While on the other hand income from hotels and toll roads, farming and nursery operations, farm rentals have been held to constitute separate income. Lake v. Bender, 18 Nev. 361, 4 P. 711, 7 P. 74; In re Pepper's Estate, 158 Cal. 619, 112 P. 62, 31 L.R.A., N.S., 1092; Seligman v. Seligman, 85 Cal.App. 683, 259 P. 984. And in the case of Van Camp v. Van Camp, 53 Cal.App. 17, 199 P. 885, the husband's salary and corporate dividends were held to be in part community and in part separate property.

It would appear from the above citations that the income of separate property may become community property if it is chiefly the product of the individual toil and application of either or both spouses. It may be pointed out here that there is no claim nor evidence that the success and resultant dividends of the N. Porter & Company corporation were due to any unusual talents or skill, management or other unusual attributes contributed to it by defendant. The evidence is undisputable that he was an employee, performing ordinary duties which could have been performed by other individuals not possessing any unusual qualifications.

The rule in California and New Mexico is not the same as in Arizona. In those states it is held where the profits of a business are mainly due to the toil and application of a spouse and the exact contribution of the separate capital cannot be determined, the yield of the capital is arbitrarily fixed as the amount which would be realized from it if it were invested and no labor expended. The balance of the income is held to be community property. The California-New Mexico cases are useful to us, however, in determining what type of business produces income as "a result of the individual toil and application of the spouse".

III. "The character of the property, as to being separate or community, becomes fixed at the time it is acquired." Pendleton v. Brown, 25 Ariz. 604, 221 P. 213, 215. See also Horton v. Horton, supra. And when the status is once fixed, the property retains its character until changed by agreement of the parties or by operation of law. This doctrine has been consistently followed by the State of Washington in many recent cases, the latest being In re Witte's Estate, 21 Wash.2d 112, 150 P.2d 595. Where community property and separate property are commingled, the entire fund is presumed to be community property unless the separate property can be explicitly traced.

IV. "When separate and community funds are mingled, the commingled funds are presumed to be community, and the burden is upon the one claiming them or any portion thereof to be separate to prove such fact and the amount by clear and sat-

isfactory evidence." Rundle v. Winters, supra.

The following Arizona cases have confirmed this holding: Brown v. Brown, 38 Ariz. 459, 300 P. 1007; Laughlin v. Laughlin, 61 Ariz. 6, 143 P.2d 336. This rule is also followed in other community property jurisdictions: Doyle v. Langdon, 80 Wash. 175, 141 P. 352; In re Brown's Estate, 124 Wash. 273, 214 P. 10; In re Barnes' Estate, 128 Cal.App. 489, 17 P.2d 1046; Buehler v. Buehler, 73 Cal.App.2d 472, 166 P.2d 608; Katson v. Katson, 43 N.M. 214, 89 P.2d 524. However, the rights of married persons in their separate property are as impregnable and as thoroughly fixed as their right in their community property. To hold otherwise would be to fly in the face of and completely ignore the provisions of Sec. 63-302.

■ No findings of fact appearing in the record, the well known presumption of law in favor of a judgment rendered without such findings must be followed here. The presumption is that the court found every fact necessary to support the judgment, and such presumptive findings must be sustained if the evidence on any reasonable construction justified it. Sec. 21-1027; Connor Livestock Co. v. Fisher, 32 Ariz. 80, 255 P. 996, 57 A.L.R. 196; Horton v. Horton, supra.

Plaintiff first urges that the property of the parties, even though purchased with separate funds of the defendant, or the increase, rents, issues or profits of the same, became community in character through the commingling of funds during the sixteen years of married life.

In Blaine v. Blaine, supra, we stated the correct rule of law, as applied to the facts in that case, when we said: "When, as here, separate and community income and funds are commingled in one account and treated as community property without segregation, the entire amount ordinarily becomes community property. This rule is based upon the theory that the community interest is paramount and is especially applicable where, as in this case, the community funds constitute the major portion of the deposits."

Under the facts in that case it wasn't necessary to state the remainder of the rule, which is found in 31 C.J., Husband & Wife, sec. 1145; 41 C.J.S., Husband and Wife, § 490: "Where separate and community property are confused or blended so that the separate property cannot be identified, the presumption in favor of the community casts the whole into the community. It has been held that this result is not entailed where the community component of the intermixture is comparatively small. In any event, the loss of the separate property results from the presumption in favor of the community in the absence of identification of the separate property, and not from the mere fact of intermixture."

■ The rule in effect that the commingling alone is not sufficient to stamp the

whole with the community status, but only when the commingling results in confusion and to loss of identity of separate items entering into the combined fund and the lack of sufficient records or evidence from which the court may determine which portion of the combined fund is separate and which is community is well stated in 31 C.J., Husband & Wife, sec. 1161; 41 C. J.S., Husband and Wife, § 495: "Mere mutations of form do not of themselves work a transmutation of the character of property, as being community or separate, after once it has been cast either into the community, or to the separate estate of the husband or the wife; and the same is true of the commingling of separate and community property, the separate property remaining separate as long as it can be identified. It is where, by such processes, the identity of separate property is lost that, by the operation of the presumption in favor of the community, a transmutation takes place."

The above rules have been approved by the Supreme Court of Washington, whose community property laws are more similar to those of Arizona than any other state, and the Washington decisions should be entitled to some persuasive degree in construing our community property statutes. In applying the above rules of law to the facts of this case it must be borne in mind that we take the evidence in the strongest manner in support of the judgment of the lower court. The evidence abundantly reveals that the defendant transacted all of his personal financial business through Porter & Company, the company in effect serving as his banker. The manner in which the records of Porter & Company were kept has been heretofore described by our reference to the testimony of James A. Smith, the Master appointed by the court to audit the account of Porter & Company. Further description is found in the testimony of Walter D. Golze, bookkeeper for Porter & Company.

"Q. On the books of N. Porter Co. you have testified, I believe, there is an account for Harold C. Porter the defendant here? A. That is right.

"Q. How long has that account been in existence on those books? A. Since the death of Harold's father in 1925. The account of H. C. Porter, personal account, was started and maintained on the books as a record of his personal transactions and to keep his accounts separate and a record of them. Sums of money that he received were credited to this personal account for identification and expenditures were charged against the account and we have always tried to maintain a more or less detail on the charges and credits so as to make it possible to keep the various things straight and make them easily accessible."

In this most important respect the facts differ from those before the court in Blaine v. Blaine, supra, and Rundle v. Winters, supra. Through the testimony of witnesses Smith, Johnson, and Golze, together with a great number of schedules and ex-

284

hibits, we are satisfied that no other deduction of a reasonable nature could be arrived at than that the source of defendant's personal income was at all times distinguishable. Although there may have been commingling of funds (that is to say, the salary of defendant and his separate income, at various times in the Porter & Company account), such commingling did not have the effect of destroying the identity of defendant's separate property so as to work a transmutation of the character of the property from separate to communtity. To hold otherwise would be to disregard completely the admissions of the plaintiff and the records in the case that at times the salary of defendant was insufficient to meet the community needs and expenses and it was necessary for the defendant to use his separate property to meet the expenses of the household.

■■■ It is conceded that defendant listed all his income as community for income tax purposes and the claim is now made that he is estopped from asserting the contrary. Certainly such a fact was admissible as an admission against interest. However, such fact is not conclusive against the husband, Franklin County v. Bailey, 250 Ky. 528, 63 S.W.2d 622, nor does it create an estoppel against the husband, Katson v. Katson, 43 N.M. 214, 89 P.2d 524. The evidentiary value of defendant's action in listing his income as community for income tax purposes, in the light of all the circumstances as described by the evidence, is for the trial court to determine. Great Falls Gas Co. v. Public Service Commission, D.C., 34 F.2d 297.

■■■ Plaintiff makes complaint by way of argument, which is not founded on a proposition of law, that a transmutation of the husband's separate property was worked by the husband, by including the name of the wife on notes, mortgages and contracts, in connection with the purchase of property with his separate funds. This contention was disposed of in Horton v. Horton, supra [35 Ariz. 378, 278 P. 371], in the following language: "And when the part of the purchase price is separate funds and the balance is borrowed on a mortgage on the property and a note signed by both spouses at the instance of the mortgagee, as between the spouses, unless the mortgage was afterwards paid from community funds, the property is separate."

It is common practice to require a wife to sign all instruments executed by the husband, as it is much more convenient for the lending agency to thus dispose of having to prove the property was separate or community. There is no claim, and indeed no evidence that community funds were ever paid for any property acquired by the parties hereto wherein the wife was called upon to sign any necessary instruments, such as mortgages, notes or contracts. On the contrary, it appears that all indebtedness that had been paid up to the time of trial was paid from the separate property of defendant. Plaintiff places

great reliance on the case of Blaine v. Blaine, supra, as authority for her contention that she acquired a one-half interest in the real property by a gift. This contention is doubtlessly based upon the fact that the wife's name appears in conveyances jointly with her husband. The Blaine case, on this point, did not establish a new principle of law, but rather it was limited to applying the rule to the express facts before the court in that case. There it was uncontradicted that the husband himself directed that the wife's name be inserted in the conveyances. Here it is uncontradicted that the husband did not direct that the wife's name be included in the deed. We have carefully reviewed our holding in the Blaine case, together with the authority on which such holding was based. While we hesitate to disturb it with the peculiar facts of that case, we refuse to extend the rule there announced to cases where the evidence fails to show that the insertion of the wife's name in the conveyances was by the direction of the husband.

■■■■ It is axiomatic that the settlement of property rights in a divorce action is not dependent upon the success or failure of the divorce itself. McFadden v. McFadden, 22 Ariz. 246, 196 P. 452. On entering a decree of divorce the court shall in such decree order such division of the property of the parties as to the court shall seem just and right, according to the rights of the parties and children, without requiring either party to divest himself or herself of the title to separate property. Sec. 27-805, A.C.A.1939. The judgment of the court is to be exercised in accordance with the above statute and not to the end that one party be rewarded or that the other party be punished.

■■■■ Applying the principles of law heretofore stated to the evidence as shown by the record we conclude that because no substantial evidence in the record sustains the finding of the trial court that the home at 309 West Monte Vista Road was community property, this finding must be set aside and the home declared to be the individual and separate property of defendant. Had we been able to sustain the trial court's finding that this property was community, we could have sustained its award of this property to plaintiff as the disposition of community property is at the discretion of the court. Schwartz v. Schwartz, 52 Ariz. 105, 79 P.2d 501, 116 A.L.R. 633. As defendant's separate property, however, the court has no power to make such an award. Sec. 27-805, A.C.A.1939; Wiltbank v. Wiltbank, 18 Ariz. 435, 162 P. 60.

Without the house, the position of plaintiff and her children is greatly altered. Had the trial court been aware that this house was defendant's separate property, undoubtedly some further provision would have been made for plaintiff and her children in the way of a sufficient increase in support money to provide funds adequate for the rental of an appropriate house. As

this court has the right to "render such judgment or order as the court below should have rendered", Sec. 21-1832, and not having current facts as to defendant's present ability to pay before us, we hereby increase plaintiff's support money from $200 to $400 per month, the amount of support money granted for the children remaining the same, with a credit of $200 per month to be allowed defendant for as long as he shall permit plaintiff, and she shall desire, to occupy his entire house and premises. This added support money here granted shall also constitute a lien against defendant's stock interest in Porter & Company.

 The trial court found that the house furnishings (with certain few exceptions heretofore mentioned) and the automobile were community property and awarded them to plaintiff. As no appeal was taken from this finding and award, it stands as made.

 Plaintiff assigns as error that provision of the decree having to do with alimony and support money being "payable until the death or remarriage of the plaintiff". Plaintiff's point is well taken. Sec. 27-811 provides that either party may from time to time seek a modification of the decree upon showing a changed condition or status, and the decree should so state. Complaint is made that the compensation allowed plaintiff's attorney by the trial court was inadequate. Based upon the pattern which we have previously set in Blaine v. Blaine, supra, the trial court should award the wife's attorneys as much as the husband paid his own. As there is insufficient data in the record before us to fix the amount to be allowed plaintiff's attorney, the trial court is directed to determine this fact and make the allowance on the basis above stated.

 The husband's cross-appeal consists of three assignments of error, supported by three propositions of law. His first complaint is that the court erred in finding certain of the real and personal property to be community property of the parties and in awarding a portion thereof to the wife. We have disposed of this question. The husband further complains that the court abused its discretion in fixing a lien upon the 408⅓ shares of the capital stock of Porter & Company, to secure the payment of the items of support and maintenance provided in the decree. Upon the record as a whole we cannot see any injustice in the security provided the plaintiff for the payment of the alimony and support money; neither can we say that the court abused its discretion in this respect.

On the other hand, the claim of the wife that the trial court abused its discretion in awarding the husband all of the available cash and income property is not well founded in the light of the fact that these are the separate property of the husband, which left the court no choice as to their disposition.

It is significant to note that the case at bar is rare in that the keeping of accounts. has been so detailed and so clear that what began as separate property must, in great part, so remain, and all of the presumptions in favor of community property become largely inoperative.

As so modified the judgment is in all other respects affirmed. The cause is remanded with directions to reform the judgment in accordance with this opinion, with the costs of this appeal to be paid by defendant.

UDALL, Justice (specially concurring).

It is with some misgiving in regard to the disposition of the home that I concur in the opinion of Judge THOMAS and yet I do not believe that the record supports any other conclusion. Separate property of a man retains its character as such after his marriage if it can always be separately traced and separately identified. And though every presumption operates strongly, as it should, in the direction and favor of the community, legal presumptions were never intended to supersede known fact. Nothing in this record supports the view that the home ever became community property. According to law it acquired its status at the time of its acquisition. It was bought with defendant's separate funds. And property retains the status it had at the time of acquisition unless and until it is changed by agreement of the parties or the operation of law. Most of

the statements made by defendant as to plaintiff's interest in his property were made before marriage, at tax time, etc., and if they were of a nature to be taken seriously, would apply with equal weight to all of defendant's separate property of every nature whatsoever. But they did not so impress the trial court and, thus far, we respect its findings. The fact that the deed and mortgage on the home were in the name of both husband and wife is significant more of business custom than of anything else under the facts here at hand. The troublesome moral contradiction in our community property law that is evidenced in this case is that a man living in great part upon property acquired by inheritance fares better when successfully sued for divorce than a man who has proved his ability to make his own way. But this is the law, and it is for the legislature and not this court to change it.

STANFORD, Chief Justice (dissenting).

This couple was married on December 25, 1928. They have a daughter and son of the ages of approximately seventeen and fourteen years, respectively. They lived on a ranch in Laveen and built a home there. They lived in Tucson while he worked for the Porter Saddle Company. They also bought a home there, she looking after all of the details and making the first payment out of their own account in the Porter Company Store, which, however, was his money. They returned to Phoenix in 1940, and through Pearl Por-

ter's efforts found a home which was purchased by them for $11,000 on the installment plan. There is still a balance due on it. The first payment was made from a joint account which he had with her in the bank, but he originally had supplied the account with his separate money. The contract for the purchase of this property was placed in the name of both husband and wife. He had often mentioned that property they acquired was part her property.

In the foregoing opinion, the case of Blaine v. Blaine was in part quoted. The opinion then has the statement: "This has been the law of Arizona since the decision in the two Woffenden v. Charauleau cases * * *. However, the above rule may be qualified, as enunciated in the case of Rundle v. Winters, 38 Ariz. 239, 298 P. 929."

The majority opinion also says that the rule was further amplified in Re Torrey's Estate, supra. But the latest case we have which thoroughly goes into this matter is Blaine v. Blaine, supra [63 Ariz. 100, 159 P.2d 790]. From that case I quote:

"Where the claim is made that property purchased during the existence of a marriage is the separate property of one of the spouses, the fund with which such property was acquired must be clearly shown to have been the separate property of such spouse. No inference will be made against the community character or that the fund was separate, except under circumstances of a conclusive tendency. The presumption in favor of the community character of the property acquired during marriage may be overcome only by clear and cogent proof. (Citing cases.)

"When, as here, separate and community income and funds are commingled in one account and treated as community property without segregation, the entire amount ordinarily becomes community property. This rule is based upon the theory that the community interest is paramount and is especially applicable where, as in this case, the community funds constitute the major portion of the deposits. Rundle v. Winters, supra; 11 Am.Jur. 198, sec. 38.

* * * * * *

"We are not unmindful of the rule that where there is reasonable evidence to support the finding of the trial court, such finding will be upheld. We think that the statement made by the defendant five years after the purchase that he did not intend to vest any interest in this property to his wife, is not reasonable evidence within the rule. The overwhelming weight of the evidence is to the contrary. Since the defendant used his separate funds to purchase the property, unless he intended to make a gift to his wife of the one-half interest, there was no reason for him to include her in the deed. If deeds not involving trusteeships, executed and delivered in the joint names of parties and treated as their joint property for years, may be overturned simply on the testimony of one of

the grantees, long subsequent to the execution of the instrument, that he did not intend the conveyance to operate as a grant to his co-grantee, no title would be safe. We cannot assent to such a rule. The defendant had the right to use this method in making a gift of one-half of the property to plaintiff. Jones v. Rigdon, 32 Ariz. 286, 257 P. 639, 640: 'Ordinarily, such a gift is evidenced by a conveyance from one to the other, but this is not the only method by which it is established. The fact that a husband causes or permits a conveyance to be made to his wife tends to show that it was the intention of the parties the property should be her separate estate.'

"In the case of Scott v. Currie, 7 Wash. 2d 301, 109 P.2d 526, it was held that where a husband purchases property in the name of the wife, paying for it from his separate funds, the inference to be drawn is that the husband intended to make a gift to his wife. In connection with such a transfer no resulting trust is created in favor of the husband. The wife is not deemed to hold the property for the use of the husband, but in her own right. (Citing cases.) The presumption that a conveyance so taken constitutes a gift may be rebutted. The burden of proof is upon the husband to establish a resulting trust rather than that the transaction amounted to a gift. This can only be done by evidence showing a clear intention of the trust. (Citing cases.) We accordingly hold that plaintiff is the owner under the evidence of a one-half interest in the Polk Street property."

Among the things that this plaintiff, Pearl Porter, needs is the security of a home. It was given to her by the trial court and now taken from her by the majority opinion herein. Where did the trial court get the idea that she should have the home if it were not from the evidence as a whole submitted before that court? At the time of the making of income tax returns, she testified that her husband told her, "He said that it was necessary for me to sign because when a man was married there was a state law whereby half of what a man had belonged to his wife and that I would have to sign in that capacity." It is not to be expected at the time of separation that he intended the marriage relation should be dissolved and she placed in a position where she hasn't a home after the surrender of these years of her life and the bearing of two excellent children. All of this I say, keeping in mind the rights under the State of Arizona for a spouse to retain his separate property and the accruments therefrom. However, much of this property was commingled, and evidently that was the basis on which the trial court gave unto her the home place in which she now resides.

Increasing monthly payments instead of awarding the home to the wife is unjust to her and a burden upon the husband. The law provides for an increase to her whenever the conditions at her home warrant same.

I believe in a liberal allowance of fees to attorneys for the wife now that the case

is remanded, the same to be commensurate with the services rendered.