330 P.2d 731

Della S. CRAVER, Appellant,

v.

Charles G. CRAVER, Jr., Joe Wesley Craver, individually and as Co-Executors of the Estate of Charles Grover Craver, deceased, Jeanette C. Nelson, Appellees.

No. 6522.

Supreme Court of Arizona.

Oct. 22, 1958.

· Minne & Sorenson, Phoenix, for appellant.

William C. Eliot, Phoenix, for appellees Charles G. Craver, Jr., and Joe Wesley Craver.

Lester J. Hayt, Phoenix, for appellee Jeanette C. Nelson.

UDALL, Chief Justice.

The sole question presented by this appeal is whether the evidence as a whole, when considered in a light most favorable to appellees, sustains the judgment of the trial court in holding that Della Craver, the surviving wife,—plaintiff-appellant— should take nothing by her complaint. We shall refer to the parties as appellant and appellees, respectively. The case was tried to the court sitting without a jury.

The controversy between the parties arose in this manner: Charles Grover Craver, now deceased (hereinafter referred to as decedent), on September 13, 1950 sold the E½W½SE¼ Sec. 3, Twp. 1 N. Range 2 East, G. & S. R. B. & M., containing approximately 40 acres, to Michael A. Parker and wife on an installment agreement under which he retained title until all of the purchase price had been paid. The instructions given to the Phoenix Title and Trust Company requested that monthly payments received by said escrow agent be forwarded to seller in the names of himself and his wife, the appellant herein. This was done until his death, which occurred on July 10, 1954. In his will (executed November 24, 1953) disposing of an estate later appraised at $54,246.-05, this 84 year old man provided generously for his wife and then devised and bequeathed to his three adult children by a prior marriage, appellees herein, the real property that he had sold and/or the proceeds from the contract of sale. Some months after the admission of his will to probate on August 5, 1954, appellant brought this action asking the court to determine the interest of all parties in the proceeds of the contract of sale. The balance then due on the contract was appraised at $25,527.05.

Appellant first proceeded in the trial of this case on the theory of "joint tenancy" which has since been abandoned; then in her brief, submitted to the lower court, switched to "an equitable assignment theory" but now contends that the proceeds of the sale are community property and that she is therefore entitled to one-half thereof irrespective of the express terms of decedent's will.

The evidence is undisputed that decedent, Charles Grover Craver, acquired the realty here in question prior to his marriage to appellant on March 25, 1929. The law is so well settled in this jurisdiction as to require no citation of authority that "property acquires its status at the time of its

acquisition." Recognition of this principle no doubt brought from appellant's counsel the following admission at the trial, viz.:

"Mr. Cavness: Oh, if the Court please, we admit it was separate property; that it was taken in his name alone; that he is the record title holder. There is no argument about that."

■ On this state of the record the burden was upon appellant to establish, by clear and convincing evidence, that the proceeds of sale were community property. As the real property was decedent's sole and separate property, the transmutation from the real property to personal property by reason of a sale would not change the proceeds thereof to community property.

We quote from appellant's brief as to her contention in this matter:

"It is her position, however, that the character of the property was changed from real to personal property by virtue of the execution of an agreement of sale and that the property right in the contract became the community property of the appellant and her husband by virtue of the instructions given to the Phoenix Title & Trust Company, and by virtue of the fact that the wife was included as one of the sellers under the terms of the agreement of sale."

It is apparent that appellant further relies upon the following additional incidents in the handling of the property which she claims conclusively established that she was legally entitled to a community interest in the balance of the unpaid contract, viz.:

(a) That she with her husband had signed the deed as prepared by the title company conveying the property to the grantees upon the fulfillment of the contract of sale.

(b) The quitclaim deed signed by the Parkers (purchasers), held in escrow in case of a default in payment by them, was drawn jointly to her and her husband.

(c) The proceeds received up until the time of decedent's death were paid to the order of both husband and wife and commingled in their joint account.

(d) That joint income tax returns for prior years, which included proceeds of sale from the sales contract in question, were indicative of an intention that the property was held as community property.

In the case of Porter v. Porter, 67 Ariz. 273, 195 P.2d 132, we recognized that title companies in order to protect themselves from any possible future claims or suits require that any one with any possibility of ownership, join in the conveyance so as to give a good marketable title free of any doubt whatsoever. We held that this merely constituted good business practice to insure oneself against future litigation

and was not necessarily to be construed as having been done for the purpose of establishing a different title to property other than that intended at the time of acquisition. As to reliance on the filing of joint income tax returns, we held in Porter v. Porter, supra, that such a fact was admissible as an admission against interest, but it was not conclusive against the husband nor did it create an estoppel against him. Since then the Federal Income Tax laws have been amended to permit the filing of joint income tax returns. The mere fact, therefore, that a joint return was made is not, in and of itself, indicative of any intent to change the status of one's property.

█ Most of the cases cited by appellant in an effort to establish that she had an interest in the proceeds of sale, were from New York which has a statutory provision for curtesy and dower; see, In re Blumenthal's Estate, 236 N.Y. 448, 141 N. E. 911, 30 A.L.R. 901, and hence these cases are not persuasive as to the issues of this case.

The appellees introduced evidence, which apparently was accepted by the trial court, to this effect:

1. That decedent had made a statement prior to the sale, in appellant's presence, that he intended to leave this separate property to his children.

2. That upon their request, appellant produced in court a prior will executed by decedent, dated June 15, 1951, which made a bequest to appellant of $75 per month from the proceeds of the installment contract of sale—the remainder apportioned $50 per month to two of his children and $125 per month to another son.

3. Testimony of appellee Joseph Craver, a son, that appellant sought his aid if deceased were to die and there was any question as to this will, as each of them had received larger portions than had been given to the other heirs.

4. The testimony of decedent's brother, Thomas Craver, that appellant in February, 1952, quarreled with decedent and tried to get him to make a new will giving her more than $75 per month from the proceeds of sale, and his statement at that time that all the proceeds were to go to his children.

5. An unsigned will, dated October ——, 1952, which the evidence shows appellant urged decedent to sign, that would have given her one-half of the proceeds of the sale. On the back of each of the pages of this instrument was a statement signed by decedent reciting that appellant had continually urged and tried to coerce him into giving her more of the proceeds than the $75 he had allowed her in the 1951 will.

6. The last will of decedent—later admitted to probate—left the real estate in question and all of the proceeds from the sale thereof to his three children,

The decisive issue presented involved the matter of decedent's intent. Primarily this was a question of fact for determination by the trial court. On the conflicting evidence adduced, the trial court resolved the issues in favor of appellees. We hold there is substantial evidence in the record to sustain the implied findings of the lower court that decedent manifested no intent to change the status of his separately acquired property into that of a community estate.

Judgment affirmed.

WINDES, PHELPS, STRUCKMEYER and JOHNSON, JJ., concur.