449 P.2d 66

Miriam A. DAVIS, Appellant,

v.

Samuel H. DAVIS, Appellee.

No. 2 CA-CIV 548.

Court of Appeals of Arizona.

Jan. 10, 1969.

only a small tax thereon because of her widow's exemption.

After the marriage Samuel moved into her home where they lived together throughout the marriage. No children were born to them.

Samuel spent $10,000 of his separate funds enlarging portions of the house, putting in air-conditioning, installing a bathroom, and otherwise remodeling the house. He moved in some of his furniture and installed new fixtures. Miriam removed some of her furniture which she sold.

The parties continued living together in the house until sometime in 1966 when Samuel moved out because of marital difficulties.

Prior to the marriage Miriam owned, in addition to her residence and furniture, a life insurance policy with a loan value of approximately $2,500, an automobile which was traded during marriage for a 1965 Dodge, a cabin on Mount Lemmon which she sold during the marriage for approximately $4,500, a small amount of cash and her personal effects.

Samuel had retired prior to marriage and had accumulated substantial assets. He had sold a business in New York in 1957 for a price in excess of $634,000, and received annual installments from the sale in the amount of $80,000, including interest, from 1957 to 1967. As these funds were received, they were invested in real estate, stocks and bonds, bank saving deposits, and time certificates of deposit.

Neither party was gainfully employed during the marriage. Both parties maintained the bulk of their assets separately identified by keeping them in their respective separate names. Samuel did, however, make certain gifts to Miriam, and he jointly acquired certain securities with her. These were awarded to her in the judgment.

■ The record would indicate that both parties had ample grounds for divorce, particularly evidence that she had pointed a revolver threateningly at him and called

---

Knez & Glatz, by Nick Knez, Tucson, for appellant.

Mesch, Marquez & Rothschild, by John K. Mesch, Jr., Tucson, for appellee.

HATHAWAY, Judge.

Miriam A. Davis has appealed from a Brown decree of divorce contending that the decree should have been entered in her favor and that the trial court otherwise committed multiple errors. The sufficiency of the evidence supporting the judgment is challenged and error is charged (1) in the admission of evidence concerning the acquisition of property during marriage, (2) failure to award a reasonable sum of permanent alimony, (3) disposition of property, and finally, (4) failure to award appellant her costs and a larger sum for attorneys' fees.

The parties were married on the 29th of August, 1960. At that time the appellant was approximately 44 years old and the appellee, Samuel Davis, was approximately 65 years old. He had been previously married and divorced. She had been a widow for several years.

Prior to the marriage, Miriam worked as a hostess and waitress and earned approximately $75 to $90 per week. She owned the home where she lived and paid

him dirty names. She put on evidence justifying a conclusion of unfaithfulness on his part. We conclude that the court was justified in entering the Brown decree of divorce.

## SUFFICIENCY OF EVIDENCE THAT PROPERTY ACQUIRED BY SAMUEL DURING MARRIAGE WAS COMMUNITY PROPERTY

■ The appellant points out that substantial property was acquired by the appellee during their marriage and contends that, although the property was taken only in his name, such property, nevertheless, is presumed to be community property, Lincoln Fire Insurance Company of New York v. Barnes, 53 Ariz. 264, 88 P.2d 533 (1939); In re Torrey's Estate, 54 Ariz. 369, 95 P.2d 990 (1939), and that appellee did not overcome this presumption, citing Evans v. Evans, 79 Ariz. 284, 288 P.2d 775 (1955); Lawson v. Ridgeway, 72 Ariz. 253, 233 P.2d 459, 29 A.L.R.2d 518 (1951); Porter v. Porter, 67 Ariz. 273, 195 P.2d 132 (1948); Arizona Central Credit Union v. Holden, 6 Ariz.App. 310, 432 P.2d 276 (1967).

The appellant also contends that the burden of proof is upon Samuel to establish the source from whence the funds came that were used for the purchase of the property acquired during marriage, and that this must be shown by " * * * strong, satisfactory, convincing, clear and cogent or nearly conclusive evidence * * *" to establish its separate nature. Porter v. Porter, supra. We have no problem with these general propositions put forth by the appellant.

She argues, additionally, that regardless of the source of the funds used for the purchases, Samuel obviously expended labor for the purpose of acquiring the property. He left their residence every morning and did not return until dinner time every evening and she could not know what he was doing or where he was going or what labor he was expending on behalf of the property accumulated during the marriage. She points out that he did not show how this time was spent and the burden was on him to account for it.

■ We have carefully examined the record, considering the evidence most favorably to supporting appellee's position and find the judgment is amply supported by the evidence. Samuel retired before marriage. He had accumulated his wealth through wages and investments prior to marriage and through the sale of his business. The evidence appears uncontradicted that all of his assets were comprised of these holdings or were converted from such holdings and retained their separate nature.[1] Horton v. Horton, 35 Ariz. 378, 278 P. 370 (1929). The property retains its separate status though sold during marriage and the proceeds are used to purchase other property. See Guthrie v. Guthrie, 73 Ariz. 423, 242 P.2d 549 (1942); Porter v. Porter, supra. The profits from the sole and separate property are also sole and separate. Osborne v. Mass. Bonding & Insurance Co., 229 F.Supp. 674 (D.Ariz. 1964).

■ We find of no consequence the labor expended by Samuel in investing and re-investing his assets. The evidence indicated that he traded very little and that he did not engage in a great amount of stock market activity. There is no evidence of commingling of the assets in question, which were controlled exclusively by Samuel in such a manner as to clearly preserve their separate nature.

## DID THE TRIAL COURT ERR IN FAILING TO AWARD MORE PERMANENT ALIMONY?

■ Miriam contends that she was not treated fairly in the award of alimony granted her, pointing out the standard of living the parties enjoyed during the marriage and Samuel's ability to pay more

---

1. A.R.S. § 25–213 provides, in part:
   "A. All property, real and personal, of the husband, owned or claimed by him before marriage * * * and also the increase, rents, issues and profits thereof, is his separate property."

than was decreed. The question of alimony is left to the sound discretion of the trial court, DeMarce v. DeMarce, 101 Ariz. 369, 419 P.2d 726 (1966). In the exercise of that discretion, the court could properly consider the length of the marriage, the ability of Miriam to provide for herself, the benefits that she received from the marriage, and her fault in bringing about the destruction of the marital relationship.

Miriam entered the marriage with a residence, a cabin on Mount Lemmon, a 1956 Dodge automobile valued at $300, $2,845.71 in cash, and an interest in an annuity policy. She emerged from the marriage with a substantial increment in assets, including:

1. A two-carat diamond ring.

2. A three-carat wedding ring.

3. A $1,500 mink stole.

4. A sable neck piece worth $125.

5. A chinchilla stole worth $1,000.

6. A Persian neck piece of undetermined value.

7. A ¼ interest in 100 shares of Mountain States Telephone and Telegraph (no value given).

8. A ½ interest in Elks Lodge Bonds, of the value of $2,100 plus interest.

9. A free and clear 1965 Dodge automobile, original cost $3,100.

10. A $10,000 addition to her real property.

11. The sum of $500 per month from February, 1967 to February, 1968.

■ Considering the duration of the marriage, the benefits received by Miriam, her needs and abilities, and her fault in contributing to its termination, we conclude that the trial court did not abuse its discretion in the amount of permanent alimony awarded.

## DID THE COURT ERR IN DECREEING THAT THE FURNITURE, FIXTURES AND OTHER HOUSEHOLD ITEMS BROUGHT IN BY

## SAMUEL REMAINED HIS SEPARATE PROPERTY?

■ This part of the judgment is again supported by the record. Although the parties disagreed in their testimony concerning the disposition that was to be made of the furnishings, Samuel testified that no gift was intended, Miriam testified to the contrary, and the trial court chose to believe Samuel's testimony.

## DID THE COURT ERR IN NOT REQUIRING SAMUEL TO RETURN THE TWO-CARAT DIAMOND OR TO REPLACE ITS VALUE IN MONEY?

■ Here, again, the parties gave conflicting testimony. Samuel testified that he permitted Miriam to use the diamond pendant, but that he at no time made a gift of it to her. Also, the two-carat diamond was replaced by a zircon. Both parties had the opportunity to have accomplished the replacement, but both denied having done so. The trial court ordered that "[t]he diamond from the diamond drop pendant shall be the sole and separate property of the party now having it in his or her possession or control." We cannot subscribe to such disposition of this issue. The prime function of courts is the resolution of disputes in an orderly fashion pursuant to law. The litigants are entitled to no less.

■ It is indisputable that the diamond was the separate property of Samuel immediately prior to the time that Miriam commenced to wear it. There is a substantial dispute as to whether a gift was made by Samuel to Miriam at that time. The essential elements of a gift of personal property are that the donor manifest a clear intent to make a present gift to the party claiming as the donee and to deliver over to this person full possession and control of the property. Goff v. Guyton, 86 Ariz. 349, 346 P.2d 286 (1959); McNabb v. Fisher, 38 Ariz. 288, 299 P. 679 (1931). As the trial court could not compel Samuel to divest himself of title to

the diamond, A.R.S. § 25–318, subsec. A, as amended, it is the sole and separate property of Samuel unless the preponderance of the evidence establishes that Samuel made a gift of the diamond to Miriam. As this issue was not resolved by the trial court we will remand the action for a new trial as to this limited issue.

## DID THE COURT ABUSE ITS DISCRETION IN FAILING TO AWARD APPELLANT HER COSTS AND A LARGER SUM FOR ATTORNEYS' FEES?

The trial court awarded the appellant temporary attorneys' fees in the sum of $250 and the additional sum of $2,500 at the conclusion of the trial. Appellee contends that the trial court did not abuse its discretion in refusing costs to the appellant, since appraisor's fees and other items of costs were incurred unnecessarily for the purpose of establishing values of certain of the appellee's properties. He contends that these expenses were incurred to establish values already known to the appellant, and, therefore, unnecessarily expended. The record seems to support appellee's position in this regard and we conclude that the trial court properly exercised its discretion in permitting the parties to abide their own costs.

Allowance of attorneys' fees and costs is, of course, discretionary with the trial court. Barnett v. Barnett, 95 Ariz. 226, 388 P.2d 433 (1964); Atkinson v. Atkinson, 2 Ariz.App. 1, 405 P.2d 919 (1965). The purpose of the allowance is to assure that the wife may have proper means to litigate the divorce action. Her attorney testified that he spent 105 and one-quarter hours in the litigation, not including five days in trial. He further testified that, as a result of the nature of the litigation and the length of the trial and the many problems involved and the anticipated future work, a fee of $5,000 would be reasonable. Be that as it may, we cannot say from the record before us that the allowance given was unreasonably small, in view of the broad discretion vested in the trial court.

Affirmed, except as modified with reference to paragraph six of the judgment of the trial court.

MOLLOY, C. J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.