NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

PETER C. WARNER, *Petitioner/Appellant*,

*v.*

KIMBERLY DRIGGS-WARNER, *Respondent/Appellee*.

No. 1 CA-CV 21-0732 FC
FILED 3-9-2023

Appeal from the Superior Court in Maricopa County
No. FC2020-003670
The Honorable Suzanne Marie Nicholls, Judge

**AFFIRMED IN PART, VACATED IN PART, REVERSED IN PART,
AND REMANDED**

COUNSEL

Dickinson Wright, PLLC, Phoenix
By Marlene A. Pontrelli, Leonce A. Richard, III, James Lawson, Vail C.
Cloar, Alexandra Crandall
*Counsel for Petitioner/Appellant*

Mark J. DePasquale, PC, Phoenix
*Co-Counsel for Respondent/Appellee*

Schmidt McElwee & Gordon, PLLC, Phoenix
By Paul G. Schmidt, Tracy Gordon
*Co-Counsel for Respondent/Appellee*

_____

**MEMORANDUM DECISION**

Judge Peter B. Swann[1] delivered the decision of the court, in which Presiding Judge Maria Elena Cruz and Judge Angela K. Paton joined.

_____

**S W A N N**, Judge:

¶1        Peter C. Warner ("Husband") appeals from the decree dissolving his marriage to Kimberly Driggs-Warner ("Wife").  Husband challenges the superior court's evidentiary rulings, characterization and valuation date of several financial accounts, spousal maintenance award, child support award, and attorney's fees award.  We vacate and remand the court's division of Husband's retirement accounts.  We reverse Wife's spousal maintenance award.  We vacate and remand Husband's child support obligation.  In all other aspects, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Husband and Wife divorced after more than twenty years of marriage.  In November 2020, the superior court set trial for June 2021.  Husband, a retired attorney, moved unsuccessfully to continue the trial.  After obtaining new counsel, Husband again asked the court to continue the trial.  The court granted Husband's continuance in an order filed June 9, 2021, and reset the date for a one-day trial in July.  The June order also specified the new deadlines for discovery and disclosure.

¶3        On July 2, Wife moved to preclude Husband's expert witness and over 1,000 pages of documents as untimely disclosed on July 1.  On July 20, the court granted Wife's request.  Husband's expert witness had performed a tracing analysis concerning certain accounts, and the court precluded that evidence.  The additional documents the court precluded

_____

[1]        Judge Peter B. Swann was a sitting member of this court when the matter was assigned to this panel of the court.  He retired effective November 28, 2022.  In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Swann as a judge *pro tempore* in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and for the duration of Administrative Order 2022-162.

contained some of Husband's financial statements, tax returns, tax forms, and letters.

¶4   The court held a one-day trial on July 27, 2021. Three witnesses testified at the trial: Husband, Wife, and Wife's father, Jerry Driggs. During the trial, the court denied Husband's request to use four demonstrative charts during his testimony and to have additional trial time.

¶5   Two months later, the court issued its dissolution decree. The court adopted the parties' agreement concerning the division of their real property, most personal property, and most financial accounts. The court also addressed the characterization of certain financial accounts, which the parties disputed.

¶6   At issue in this appeal are the following rulings:

> The court found that Husband failed to prove that the funds used to start his retirement accounts, the E*Trade Roth IRA #3012 and the Rollover IRA #3019, were his sole and separate property. The court found the accounts to be community property and divided them equally. The court also awarded Husband the withdrawals of the Rollover IRA #3019 after the date of service as his sole and separate property and found any related tax liability his sole responsibility.

> The court found that the Merrill Edge 529 plan account was community property because Husband failed to prove that fifty percent of the original funds used to open the account were his sole and separate property.

> The court found that the funds used to open the Commonwealth account x7788 were Wife's sole and separate property and awarded her the account.

> The court found that Wife qualified for spousal maintenance and awarded Wife spousal maintenance of $2,000 per month for three years. The court attributed Husband's income to be $45,000 and ordered Husband to pay $1,577 per month in child support.

> Lastly, the court found after consideration of financial resources and reasonableness of positions that Husband shall pay a portion of Wife's reasonable attorney's fees and costs pursuant to A.R.S. § 25-324(A) and A.R.S. § 25-415. The court

issued a judgment and order requiring Husband to pay Wife $110,000 in attorney's fees.

¶7          Husband appeals.

## DISCUSSION

I.     THE COURT DID NOT ABUSE ITS DISCRETION BY EXCLUDING HUSBAND'S DOCUMENTARY EVIDENCE, EXPERT WITNESS, AND CHARTS CREATED BY HUSBAND'S EXPERT.

A.     Documentary Evidence and Husband's Expert Witness

¶8          Husband first contends that the court erroneously precluded his documentary evidence and his expert witness because they were timely disclosed. The trial court has broad discretion in ruling on disclosure and discovery matters, and we do not disturb those rulings absent an abuse of discretion. *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14 (App. 2013). We review the court's interpretation of its own June order de novo. *See Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 10 (App. 2007).

¶9          On Husband's motion, the court continued the trial to July 27, 2021. The court also amended the disclosure and discovery deadlines in the June order:

> 1. Both parties shall complete all disclosure requirements required by Rules 49, 50 and 91, Arizona Rules of Family Law Procedure, including an exchange of all relevant information, documents and exhibits at least 30 days prior to trial unless the Court set another discovery deadline. . . . .

> 2. All depositions and discovery contemplated by Rules 49 through 65, Arizona Rules of Family Law Procedure, shall be completed and any motions regarding discovery shall be filed **no later than July 2, 2021.**

¶10          Husband disclosed his expert witness and over 1,000 pages of documents on July 1, 2021—one day before the inarguably final day for completion of *discovery*. Wife filed a motion in limine to preclude Husband's documentary evidence and expert witness as untimely disclosures, and the court granted Wife's motion.

¶11          Husband contends that his expert witness and documentary evidence were timely disclosed because he provided them by July 2, 2021.

4

But the June order expressly differentiated between the "discovery" and "disclosure" deadlines. The first paragraph references "disclosure requirements"; the second paragraph references "all depositions and discovery."

¶12 The court correctly found that Husband failed to meet the deadline for disclosure. Under any reasonable interpretation of the court's order or the rules, disclosure that occurs one day before the close of discovery is untimely. Such last-minute disclosure provides the opposing party no meaningful opportunity to conduct discovery based on the disclosures and amounts to little more than sandbagging. Our rules contemplate that disclosure precedes discovery, and the court rightly found a violation. Husband, a retired lawyer himself, did not argue that the late disclosure was his counsel's fault. And because no children's interests were at stake in this case, the court acted within its discretion when it precluded Husband's untimely disclosed evidence.

### B. Charts Created by Husband's Expert

¶13 Husband also contends that the court erroneously precluded him from presenting four demonstrative charts during his testimony. We review the superior court's evidentiary rulings for abuse of discretion and resulting prejudice. *James A. v. Dep't of Child Safety*, 244 Ariz. 319, 321, ¶ 7 (App. 2018).

¶14 At trial, Husband did not mark the charts as exhibits, representing instead that they were for demonstrative purposes only. Husband testified that the charts summarized only information contained in Exhibits 30 and 31, which related to his retirement accounts, but acknowledged that he provided the data for the charts but did not prepare them himself. Wife objected to the use of the charts, because (1) they were prepared by the expert whose testimony and report the court had already precluded, and (2) they summarized information not contained within the admitted exhibits.

¶15 Arizona Rule of Evidence 1006 permits use of a summary or chart as an alternative to voluminous records. "The person creating a summary will ordinarily be required to lay the foundation and be available for cross-examination." Ariz. R. Evid. 1006 cmt. to original 1977 rule. Though the voluminous records do not need to be placed into evidence, they must be admissible and made available to the opposing party for inspection. *Rayner v. Stauffer Chem. Co.*, 120 Ariz. 328, 333–34 (App. 1978).

The Rule is not an alternate means of introducing inadmissible evidence or evidence the court has precluded.

¶16 Husband contends that he sought to use the charts merely as pedagogical tools to summarize already admitted Exhibits 30 and 31 in a visual form. But the charts clearly went beyond the scope of admitted Exhibits 30 and 31, containing information not admitted into evidence. *See Standard Charted PLC v. Price Waterhouse*, 190 Ariz. 6, 47–48 (App. 1996) (pedagogical devices may not represent nonexistent or inaccurate evidence); *see also U.S. v. Wood*, 943 F.2d 1048, 1053 (9th Cir. 1991) (pedagogical devices summarize documents already admitted into evidence). The court did not abuse its discretion by prohibiting Husband from referencing the charts created by Husband's expert.

C.    Due Process

¶17 Husband argues that the preclusion of his expert witness, documentary evidence, and charts had the cumulative effect of denying him due process. We review constitutional issues, including alleged violations of due process, de novo. *Wassef v. Ariz. State Bd. of Dental Exam'rs*, 242 Ariz. 90, 93, ¶ 11 (App. 2017).

¶18 Due process requires "notice and opportunity to be heard in a meaningful manner and at a meaningful time." *Id.* at ¶ 12 (citation omitted). Due process includes the "right to offer evidence." *Gaveck v. Ariz. Bd. of Podiatry Exam'rs*, 222 Ariz. 433, 437, ¶ 14 (App. 2009). "[D]ue process requires the court to allow parties a reasonable opportunity to present testimony whenever resolution of a material contested issue hinges on credibility." *Volk v. Brame*, 235 Ariz. 462, 466, ¶ 14 (App. 2014).

¶19 But due process does not excuse noncompliance with reasonable procedural rules or deadlines, and Husband's failure to comply with such deadlines—not lack of opportunity—deprived him of the opportunity to present some of his evidence. The court's June order, the Arizona Rules of Family Law Procedure, and the Arizona Rules of Evidence placed the parties on notice about the procedural rules governing evidence admissibility and expert testimony. *See* Ariz. R. Evid. 1006; ARFLP 49(j). Husband forfeited his opportunity to present evidence by failing to comply with the court's reasonable procedural rules. The court did not deprive Husband of his due process rights.

II.     THE COURT DID NOT ABUSE ITS DISCRETION OR COMMIT LEGAL ERROR BY DENYING HUSBAND'S REQUEST FOR ADDITIONAL TRIAL TIME.

¶20     Husband next contends that the court erred in denying his request for additional trial time. "The court may impose reasonable time limits appropriate to the proceedings." ARFLP 22(A). We review the enforcement of trial time limits for abuse of discretion and will not reverse unless a party can demonstrate that it suffered prejudice because of the time limits. *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 90–91, ¶¶ 29–30 (App. 1998).

¶21     Both parties received notice multiple times before the trial, beginning November 12, 2020, about the one-day trial limit. The parties agreed before the trial on many issues, so fewer issues remained for trial. Also, the parties had time to prepare for trial, knowing the time constraints, from November 2020 to July 2021.

¶22     Due process demands that "the court [ ] afford litigants adequate time to present their evidence." *Volk*, 235 Ariz. at 468, ¶ 19. During the trial, the court assisted the parties with timekeeping, tracking their time and reminding them about time remaining. There has been no showing that Husband lacked the opportunity to present relevant evidence in a proper manner, and the court did not abuse its discretion or violate due process by denying him additional trial time.

III.    THE COURT ERRED IN ITS CLASSIFICATION OF HUSBAND'S RETIREMENT ACCOUNTS, AND CORRECTLY CHARACTERIZED THE WITHDRAWALS FROM HUSBAND'S ROLLOVER IRA #3019, THE 529 PLAN ACCOUNT, AND WIFE'S COMMONWEALTH ACCOUNT X7788.

¶23     Husband contends that the court erred in the classification of property in his retirement accounts, the 529 plan account, and the Commonwealth account x7788.

¶24     We review the superior court's characterization of property as separate or community property de novo. *In re Marriage of Pownall*, 197 Ariz. 577, 581, ¶ 15 (App. 2000). We defer to the superior court's "determination of witnesses' credibility and the weight to give conflicting evidence." *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998). We review the record in the light most favorable to affirming when examining the nature of the property as community or separate. *Sommerfield v. Sommerfield*, 121 Ariz. 575, 577 (1979).

¶25 Property acquired by the parties during the marriage is presumed to be community property, unless acquired by gift, devise, or descent, or after the service of a petition for dissolution of marriage. A.R.S. § 25-211. The spouse contending that the property acquired after the marriage is his or her separate property has the "burden of establishing the separate character of the property by clear and convincing evidence." *Cockrill v. Cockrill*, 124 Ariz. 50, 52 (1979). A spouse's real and personal property owned before the marriage is that spouse's separate property. A.R.S. § 25-213(A). Whether property is community or separate "becomes fixed at the time it is acquired." *Porter v. Porter*, 67 Ariz. 273, 281 (1948) (citation omitted). A mere change in form does not change the property's character as community or separate. *Id.* at 283.

¶26 When separate and community property are commingled, resulting in the loss of the separate property's identity in a combined fund, the character of the property can be transmuted from separate to community. *Id.* at 282–83. The court presumes the commingled funds to be community property unless the separate property can be explicitly traced. *Id.* at 281–82.

### A. Husband's Retirement Accounts

¶27 First, Husband contends that the court erred by characterizing his retirement accounts as community property.

#### 1. Husband's E*Trade Roth IRA #3012

¶28 Husband argues that the court erred by characterizing his E*Trade Roth IRA #3012 account as community property. We agree. The court found that Husband did not prove the funds used to start the original account derived from his sole and separate property.

¶29 Although it is undisputed that Husband opened the E*Trade Roth IRA #3012 account during the marriage, the evidence demonstrates that Husband's separate property funded the account. Husband's accounting statements clearly show Husband had sole and separate property in his Rollover IRA through the Salomon Smith Barney Account from before the marriage. Husband had a total value of $107,447.93 in his Rollover IRA Salomon Smith Barney account on December 31, 1999.

¶30 Even though the record is sparse, Husband testified that he converted his Rollover IRA to a Roth IRA in 2012. Although the court found Husband to not be credible, his testimony is supported by the statement containing the line "Rollover Conversion" showing a deposit made in

December 2012 to his Just 2 Trade account. Husband testified that he contributed to the account once during the marriage, in 2012, using community funds. The deposit would not cause the separate property to lose its character because the separate property is still traceable. The court failed to provide any tracing analysis identifying the portion of the E*Trade Roth IRA #3012 that was Husband's separate property. We therefore vacate that portion of the decree and remand for further proceedings.

2. Husband's Rollover IRA #3019

¶31 Husband argues that the court erred by characterizing his Rollover IRA #3019 account as community property. We agree. The court found that Husband failed to prove the funds used to start the original account were his sole and separate property.

¶32 Even though Husband opened the Rollover IRA #3019 during the marriage, once more, Husband's accounting statements clearly show Husband had separate property in his money purchase plan from before the marriage. A.R.S. § 25-213. Husband had $110,382.97 in his money purchase plan as of December 31, 1999. Husband testified that he rolled over $115,165 from his money purchase plan to his profit-sharing plan in 2003. Husband also testified that he then rolled over the profit-sharing plan in May 2013 to the Rollover IRA #3019. Again, even though the court found Husband to not to be credible, his tax returns corroborate that in 2003 the profit-sharing plan received the $115,165 from a source other than contributions.

¶33 Husband testified that he made six contributions throughout the marriage to the account from 2000 to 2009 using community funds. Husband provided supporting documentation of each contribution made. Husband also stated that he made no more contributions after 2009. The court did not identify and allocate any of Husband's sole and separate property. Because Husband clearly has separate property from before the marriage that formed part of the account, we vacate the court's order dividing Husband's Rollover IRA #3019 and remand.

3. Husband's Withdrawals from Rollover IRA #3019

¶34 Husband also argues that the court erred by finding the withdrawals he made after the date of service from the Rollover IRA #3019 to be from his separate and sole property, along with any tax liability.

¶35 Husband began taking disbursements from the Rollover IRA #3019 in May 2020. Husband withdrew over $130,000 from the account.

9

Husband testified that he used the withdrawals made after the date of service for community expenses.

¶36        But Husband failed to introduce any financial statements or documents at trial corroborating his testimony. Husband asserted he ran out of time at trial to introduce any trial exhibits supporting his testimony, but we do not perceive any lack of opportunity to refer to the exhibits. Finding no error, we affirm this portion of the decree.

        4.        QDRO Specialist

¶37        Husband also contends that the court erred by not allowing a QDRO specialist to perform a tracing analysis of the retirement accounts. But the court is not required to appoint experts to help Husband prove his case. On remand, if implementation of the decree would benefit from the services of a QDRO specialist, the parties are free to engage one.

        B.        529 Plan Account

¶38        Second, Husband contends that the court erred by characterizing the 529 plan account as community property.

¶39        It is undisputed that the parties opened the 529 plan account during the marriage. The parties opened the account with $50,000 from Husband's Merrill Lynch account and $50,000 from an undisputed community property source. Husband argues that the Merrill Lynch account is his sole and separate property, so half of the 529 plan account likewise is his separate property.

¶40        Though some funds in the Merrill Lynch account may have been his separate property, Husband deposited a substantial amount of presumptively community property funds into the Merrill Lynch account during the marriage. The deposit commingled with any separate property in the account, rendering the Merrill Lynch account community property. *Porter*, 67 Ariz. at 281–82. At trial, Husband failed to provide evidence to trace the source of this deposit. Husband asserts that he has documents to trace the deposit, but those were precluded as not timely disclosed, a ruling we have affirmed. Therefore, the Merrill Lynch funds used to open the 529 plan account are community property, so the 529 plan account is fully community property. The court did not err by awarding Wife one-half of the 529 plan account.

C.     Wife's Commonwealth Account x7788

¶41      Third, Husband also contends that the court erred by characterizing Wife's Commonwealth account x7788 as her sole and separate property.  The court found that Wife provided clear and convincing evidence tracing the funds used to open the Commonwealth account from her separate property.

¶42      It is undisputed that Wife opened the Commonwealth account during the marriage.  Wife sold real property, undisputedly characterized as her separate property from before the marriage, in January 2003 for $154,391.45.  Wife deposited the proceeds from the property's sale into her separate bank account on January 2, 2003.  Wife deposited her paychecks, which were community property, into the bank account during 2003, thereby commingling the community property with her separate property.

¶43      Husband contends that Wife did not trace her separate property after commingling her bank account.  But the $100,000 from Wife's bank account used to open the Commonwealth account on December 22, 2003, can be traced to the separate property funds from her property's sale.  Wife opened the Commonwealth account in the same year she received the proceeds from her property's sale.  Wife only made about $36,000 in income during 2002 and 2003, so the $100,000 could not have derived from her income.  Additionally, before Wife deposited the sale's proceeds in her bank account, she only had $5,728 in the account.  Thus, sufficient evidence exists that Wife used her separate property's proceeds to fund the $100,000 used to open the Commonwealth account.

¶44      Husband also argues that the court's failure to divide the Commonwealth account is inconsistent with its rulings about Husband's retirement accounts and Wife's American Funds IRA #7210.  We have vacated and remanded with respect to the issue regarding Husband's retirement accounts.  Wife's American Funds IRA #7210 is a different account with different evidence provided.  We conclude that the court did not commit legal error by awarding Wife the Commonwealth account as her sole and separate property.

IV.     THE COURT DID NOT ABUSE ITS DISCRETION BY DIVIDING THE COMMUNITY SHARE OF THE E*TRADE #3880 ACCOUNT AS OF THE DATE OF SERVICE.

¶45      Husband contends that the court erred in dividing the E*Trade #3880 account held in Wife's name as of the date of service.  He

argues that the account increased in value after the marital community terminated in June 2020, and the account should be divided as of the date of distribution.

**¶46**      We review valuation dates for abuse of discretion. *Sample v. Sample*, 152 Ariz. 239, 241–42 (App. 1986). The valuation date chosen by the court "rests within the wide discretion of the trial court and will be tested on review by the fairness of the result." *Id.* at 242–43.

**¶47**      Before the trial, the parties agreed that the E*Trade #3880 account was community property awarded to Wife, subject to an offset to Husband for his one-half community interest. Before trial, the parties disputed the account's value, but they did agree to reduce the account by $7,088 for the parties' 2018 amended returns. Although Husband now argues for the account's division as of the date of distribution, he admitted that he provided no evidence at trial to support his position that the account appreciated in value. Rather, only Wife testified about the E*Trade account, stating its division should be as of the date of service, when its balance was $125,522.

**¶48**      We perceive no abuse of discretion in the selection of the date of service as an appropriate and fair valuation date. We affirm the division of the account as of the date of service.

V.      THE COURT ERRED IN ITS AWARD OF SPOUSAL MAINTENANCE.

**¶49**      Husband contends that the court erred by awarding Wife spousal maintenance. The court awarded Wife $2,000 per month for three years. We review spousal maintenance awards for an abuse of discretion. *Gutierrez*, 193 Ariz. at 348, ¶ 14. We review whether the court properly applied the law to its factual findings de novo. *See Pownall*, 197 Ariz. at 580, ¶ 7.

**¶50**      To be eligible for spousal maintenance, the spouse must meet at least one of the criteria enumerated in A.R.S. § 25-319(A). At the time relevant to this case, the statute required that the spouse seeking spousal maintenance either (1) lack sufficient property to provide for that spouse's reasonable needs; (2) be unable to be self-sufficient through appropriate employment; (3) have made a significant financial or other contribution to the education, training, vocational skills, career or earning ability of the other spouse; (4) have a marriage of long duration and is of an age that may preclude becoming self-sufficient; or (5) have significantly reduced his or her spouse's income or career opportunities for the benefit of the other

spouse. A.R.S. § 25-319(A). The purpose of spousal maintenance is to "achieve an independence for both parties and to require an effort toward independence by the [spouse] requesting maintenance." *Schroeder v. Schroeder*, 161 Ariz. 316, 321 (1989).

¶51 Although the court made factual findings about all the criteria, none of its findings support an award. First, the court found, and the record supports, that Wife received and has substantial assets—several hundred thousand dollars—not that she lacked the resources necessary to meet her needs. *See* A.R.S. § 25-319(A)(1). Second, the court found, and the record supports, that Wife is highly skilled and holds assets with potential to produce future income. The court found that Wife's income has been averaging $45,000 per year over the last ten years. Wife earned $107,611 in 2019, showing that Wife can maintain appropriate employment to be self-sufficient. *See* A.R.S. § 25-319(A)(2).

¶52 For the third and fifth criteria, the court found no evidence to suggest that Wife should receive spousal maintenance. *See* A.R.S. § 25-319(A)(3), (5). Lastly, for the fourth criterion, the court did acknowledge that the parties had a marriage of long duration, over twenty years. But the court did not find that Wife's age precludes her from gaining employment adequate to be self-sufficient. The court found that Wife is fifty-one years old, and that she can maintain employment. Although the court found that her income would not be at a level to meet her current lifestyle, it established that Wife is highly skilled and consistently employed.

¶53 Based on its own factual findings, the court erred in its conclusion that Wife is entitled to spousal maintenance. We reverse the spousal maintenance award.

VI. THE COURT ERRED IN ITS CALCULATION OF HUSBAND'S INCOME FOR PURPOSES OF CHILD SUPPORT.

¶54 Husband also contends that the court erred by finding that his income was $45,000 per month for purposes of child support. Husband argues that the court erred in calculating his income by including unrealized gains instead of actual, realized gains from Husband's sole and separate brokerage accounts.

¶55 We review a court's award of child support for abuse of discretion, but we review its interpretation of the then-applicable version of the Arizona Child Support Guidelines ("Guidelines"), A.R.S. § 25-320 app. (2018), de novo. *Hetherington v. Hetherington*, 220 Ariz. 16, 21, ¶ 21 (App. 2008). When interpreting the Guidelines "we look first to their plain

language . . . [and] strive to interpret the relevant section in conjunction with other provisions of the Guidelines and consistent with their overall purpose." *Milinovich v. Womack*, 236 Ariz. 612, 615, ¶ 10 (App. 2015).

**¶56** Husband calculated his income to be somewhat over $8,000 monthly. For her part, Wife calculated Husband's income to be $45,000 monthly. The difference in the parties' calculations appears to derive from Husband's monthly unrealized capital gains from his interactive brokerage account, as the account increased in value approximately $174,000 over the course of five months, or about $35,000 monthly. The court calculated child support using $45,000 as Husband's income because it found Wife's testimony, not Husband's, to be credible regarding Husband's earnings.

**¶57** Gross income, for purposes of child support, includes "income from any source, and may include, but is not limited to . . . capital gains. Cash value shall be assigned to in-kind or other non-cash benefits." Guidelines § 5(A) (2018). The court must value unexercised, vested, matured stock options on a case-by-case basis, and it is not required to follow any single valuation method. *Engel v. Landman*, 221 Ariz. 504, 514, ¶¶ 40–41 (App. 2009); *see also In re Marriage of Robinson*, 201 Ariz. 328, 334, ¶ 16 (App. 2001). Although vested, unexercised stocks have some value as income, the "investment decisions or whims of the employee parent" should not determine child support. *Robinson*, 201 Ariz. at 333, ¶ 12; *Engel*, 221 Ariz. at 513–14, ¶¶ 38, 40. The assumption that options will appreciate each year "does not comport with the realities of the market." *Engel*, 221 Ariz. at 513, ¶ 39. The valuation method selected by the court should consider "the nature of the stock options, market conditions, tax consequences, ease of application, and other facts and circumstances peculiar to each case." *Robinson*, 201 Ariz. at 334, ¶ 16; *see also Engel*, 221 Ariz. at 514, ¶ 42.

**¶58** Regarding Husband's interactive brokerage account, Husband asserts that he "never sold the assets in question and therefore did not realize any capital gains or income." There is no evidence that he realized any income from these market gains. Similarly, in *Engel,* the court calculated the father's income by including the appreciation in value of his vested, unexercised stocks. 221 Ariz. at 513, ¶¶ 34–35. The court erred by using this valuation method in *Engel* because it relied on market fluctuations that did not affect funds available for child support. *Id.* at ¶ 39. Here, the court also erred by including Husband's unrealized capital gains in his gross income.

¶59 The court abused its discretion by calculating Husband's monthly gross income to be $45,000. We vacate and remand Husband's child support obligation in accordance with this decision.

## VII. THE COURT DID NOT ABUSE ITS DISCRETION IN AWARDING WIFE ATTORNEY'S FEES.

¶60 Husband contends that the court erred by requiring him to pay Wife $110,000 in attorney's fees. We review a fee award for abuse of discretion. *MacMillan v. Schwartz*, 226 Ariz. 584, 592, ¶ 36 (App. 2011). The court may order a party to pay a reasonable amount to the other party for attorney's fees after considering the financial resources and the reasonableness of the parties' positions throughout the litigation process. A.R.S. § 25-324(A).

¶61 The court found that Husband has considerably more financial resources available to him than Wife, and that he acted unreasonably during the litigation process. The court specified how Husband had been unreasonable: he cancelled mediation without good cause; failed to participate in good faith settlement discussions; advanced numerous claims of community interest in properties he knew the community did not have an interest in; failed to provide timely disclosures and discovery; insisted Wife provide further disclosure; withdrew money from the Rollover IRA #3019 without Wife's knowledge after the date of service; and tried to undo a Rule 69 agreement without good cause. The court also found Husband knowingly advanced a false claim under A.R.S. § 25-415.

¶62 These findings are adequate to justify an award of fees, and the record supports them. We affirm the award.

### ATTORNEY'S FEES ON APPEAL

¶63 Both Husband and Wife request attorney's fees on appeal pursuant to A.R.S. § 25-324 and ARCAP 21. In the exercise of our discretion, we deny their requests for attorney's fees on appeal. Husband is entitled to his costs on appeal, pending compliance with ARCAP 21.

## CONCLUSION

**¶64** We vacate and remand the court's division of Husband's retirement accounts. We reverse Wife's spousal maintenance award. We vacate and remand the court's child support calculation. In all other aspects, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA